145 F.3d 1348
 330 U.S.App.D.C. 278
 In re: Eli J. SEGAL
(Segal Fee Application)
 Division No. 96-1.
 United States Court of Appeals,
District of Columbia Circuit.
 June 16, 1998.
 
 [330 U.S.App.D.C. 279] Division for the Purpose of Appointing Independent Counsels Ethics in Government Act of 1978, as Amended.
 Before: SENTELLE, Presiding Judge, BUTZNER and FAY, Senior Circuit Judges.
 
 O R D E R
 
 1
 This matter coming to be heard and being heard before the Special Division of the Court upon the application of Eli J. Segal for reimbursement of attorneys' fees and costs pursuant to section 593(f) of the Ethics in Government Act of 1978, as amended, 28 U.S.C. § 591 et seq. (1994), and it appearing to the court for the reasons set forth more fully in the opinion filed contemporaneously herewith, that the motion is well taken, it is hereby
 
 
 2
 ORDERED, ADJUDGED, and DECREED that the United States reimburse Eli J. Segal for attorneys' fees and expenses he incurred during the investigation by Independent Counsel Curtis Emery von Kann in [330 U.S.App.D.C. 280] the amount of $99,767.17 this 16th day of June, 1998.
 
 ON APPLICATION FOR ATTORNEYS' FEES
 PER CURIAM:
 
 3
 Eli J. Segal ("Segal") petitions this Court under section 593(f) of the Ethics in Government Act of 1978, as amended, 28 U.S.C. § 591 et seq. (1994) ("Act"), for reimbursement of attorneys' fees he incurred during and as a result of the investigation conducted by Independent Counsel ("IC") Curtis Emery von Kann. Segal seeks reimbursement in the amount of $102,518.20. After considering Segal's petition we find that his request is for the most part very reasonable and that he is entitled to an award of attorneys' fees and expenses totaling $99,767.17.
 
 Background
 
 4
 Pursuant to the National and Community Trust Act of 1993, the Corporation for National and Community Service ("Corporation") was established on October 1, 1993. President Clinton selected Segal as the Corporation's first Chief Executive Officer. The mission of the Corporation was to manage the federal government's community service programs. To that end, the National and Community Trust Act authorized the Corporation to solicit and accept donations of money and property.
 
 
 5
 Segal and other employees of the Corporation, however, believing that some foundations and corporations would be unwilling or unable to contribute to a federal agency, incorporated the Partnership for National Service ("Partnership") as a private, nongovernmental charitable organization to accept private donations and to support the operations of the Corporation. The founders intended the Partnership to be controlled largely by the Corporation's officers. Accordingly, three of the Corporation's officers, including Segal, became the original officers and directors of the Partnership. The Independent Counsel concluded that the founders of the Partnership did not have a personal pecuniary interest or motive in forming the Partnership.
 
 
 6
 18 U.S.C. § 208 provides, in relevant part, that
 
 
 7
 whoever, being an officer or employee of ... any independent agency of the United States ... participates personally and substantially as a Government officer or employee, through decision, approval, disapproval, recommendation, the rendering of advice, investigation, or otherwise, in a judicial or other proceeding, application, request for a ruling or other determination, contract, claim, controversy, charge, accusation, arrest, or other particular matter in which, to his knowledge, he, his spouse, minor child, general partner, or organization in which he is serving as officer [or] director, ... has a financial interest [shall be guilty of a misdemeanor, or, in the case of a willful violation, shall be guilty of a felony].
 
 
 8
 Therefore, as an officer of the Corporation, Segal was prohibited from taking personal, substantial action in an official capacity in a particular matter in which he had a financial interest. As an officer and director of the Partnership, any financial interest of the Partnership was imputed to him. Nevertheless, Segal, acting in his official capacity as CEO of the Corporation, engaged in fund raising for the benefit of the Partnership. This action became of concern to the Corporation's Office of Inspector General, which forwarded to the Department of Justice information that Segal may have violated, inter alia, federal criminal conflict of interest laws.
 
 
 9
 The Act provides that upon receiving sufficient information concerning "certain covered persons," the Attorney General is to conduct a preliminary investigation, 28 U.S.C. § 591(a), and from this preliminary investigation she is to determine whether further investigation is warranted, § 592(a)(1). If further investigation is indeed warranted, then the Attorney General is to apply for the appointment of an independent counsel to conduct the investigation. § 592(c)(1).
 
 
 10
 Upon receipt of the information from the Office of Inspector General, the Attorney General determined that Segal was a "covered person" within the meaning of the Act "because he was the Chief of Staff of the 1992 Clinton/Gore for President Committee, [330 U.S.App.D.C. 281] and participated in the day-to-day management of the campaign at the national level." Application to the Court Pursuant to 28 U.S.C. § 592(c)(1) for the Appointment of an Independent Counsel, In re Eli J. Segal, Division No. 96-1 (D.C. Circuit, Independent Counsel Division) (filed October 30, 1996) ("Application for Appointment"), at 2. As a result, the Attorney General commenced a preliminary investigation in accordance with the Act, and on October 30, 1996, she applied to this court for the appointment of an independent counsel. On November 27, 1996, we appointed Curtis Emery von Kann to serve as independent counsel for the investigation.
 
 
 11
 During the investigation, the IC's office reviewed numerous documents, interviewed various witnesses, and also interviewed Segal over a two-day period. After reviewing the evidence, the IC concluded that, based on Segal's financial interest in the Partnership, he had committed a misdemeanor violation of the conflict of interest laws. Nevertheless, the IC declined prosecution, finding that Segal did not possess knowledge of the financial interest. Such knowledge is not necessary for a technical violation of the law, but it is required by Department of Justice guidelines before charges are brought. Final Report of the Independent Counsel in re: Eli J. Segal, Dec. 19, 1997 ("Final Report"), at 6, 14-15. Additionally, the Independent Counsel's office cleared Segal of any other criminal violations concerning the matter, including false statements, conversion of federal funds, and fraud. Id. at 16-24.
 
 
 12
 After the Independent Counsel's investigation, Segal, pursuant to section 593(f)(1) of the Act, petitioned this court for reimbursement of his attorneys' fees. As directed by section 593(f)(2) of the Act, we forwarded a copy of Segal's fee petition to the Attorney General and the IC and requested written evaluations of the petition. The court expresses its appreciation to the IC and to the Attorney General for submitting these evaluations, which we have given due consideration in arriving at the decision announced herein.
 
 Analysis
 
 13
 The Independent Counsel statute provides that:
 
 
 14
 Upon the request of an individual who is the subject of an investigation conducted by an independent counsel pursuant to this chapter, the division of the court may, if no indictment is brought against such individual pursuant to that investigation, award reimbursement for those reasonable attorneys' fees incurred by that individual during that investigation which would not have been incurred but for the requirements of this chapter.
 
 
 15
 28 U.S.C. § 593(f)(1). To obtain an attorneys' fees award under the statute a petitioner must show that the following requirements are met:
 
 
 16
 1) the petitioner is a "subject" of the investigation;
 
 
 17
 2) the fees were incurred "during" the investigation;
 
 
 18
 3) the fees would not have been incurred "but for" the requirements of the Act; and
 
 
 19
 4) the fees are "reasonable."
 
 
 20
 See In re North (Dutton Fee Application), 11 F.3d 1075, 1077-82 (D.C.Cir., Spec. Div.1993) (per curiam). We will address each of these requirements in turn.
 
 A. "Subject" Status
 
 21
 We have previously defined the term "subject" as a person whose conduct is within the scope of the independent counsel's investigation such that "the Independent Counsel might reasonably be expected to point the finger of accusation" at him. Dutton, 11 F.3d at 1078; see also In re North (Shultz Fee Application), 8 F.3d 847, 850 (D.C.Cir., Spec. Div.1993) (per curiam). As the named subject of the IC's investigation, Segal surely fits within this definition.
 
 
 22
 Additionally, in Shultz we held that, under any definition of the term, the criterion for "subject" status is squarely met when the independent counsel tells a party that he is in fact a subject. 8 F.3d at 850. Segal states that he was advised at the outset of the IC's investigation that he was considered the primary target; the IC substantiates this, noting that Segal's subject status was communicated to Segal's attorneys.
 
 
 23
 [330 U.S.App.D.C. 282] However, on June 16, 1997, the IC notified Segal that criminal charges would not be pursued against him. As Segal admits, this notification took him outside the definition of "subject" for purposes of attorneys' fees reimbursement. Consequently, we will deduct fees that were incurred after this change in Segal's status, except in connection with the Final Report. See In re Mullins (Mullins Fee Application), 84 F.3d 459, 463-465 (D.C.Cir., Spec. Div.1996) (per curiam).
 
 B. Fees Incurred "During" the Investigation
 
 24
 This court has identified the maximum period for which fees can be sought as spanning from the time an IC begins an investigation of an individual to the deadline for filing comments to the final report. See, e.g., In re Olson, 884 F.2d 1415, 1420-22 (D.C.Cir., Spec. Div.1989) (per curiam). The relevant period in this case is from November 27, 1996, when IC von Kann was appointed, to October 20, 1997, the deadline for filing comments to the Final Report. Segal's counsel has reviewed the billings and rightly excluded all fees incurred prior to the appointment of the IC. We find that the remaining entries fall within the relevant period.
 
 
 25
 C. Fees Not Incurred "But For" the Requirements of the Act
 
 
 26
 The Act requires that to be reimbursable, attorneys' fees must be such as "would not have been incurred but for the requirements of [the Ethics in Government Act]." 28 U.S.C. § 593(f)(1) (emphasis added). Therefore, "[a]ll requests for attorneys' fees under the Act must satisfy the 'but for' requirement of" the Act. In re Sealed Case, 890 F.2d 451, 452 (D.C.Cir., Spec. Div.1989) (per curiam). The purpose of awarding only fees that would not have been incurred "but for" the Act is to ensure that "officials ... who are investigated by independent counsels will be subject only to paying those attorneys' fees that would normally be paid by private citizens being investigated for the same offense by" federal executive officials such as the United States Attorney. Id. at 452 (citing S.REP. NO. 97-496, 97th Cong., 2d Sess. 18 (1982), reprinted in 1982 U.S.C.C.A.N. 3537, 3554 (referring to "fees [that] would not have been incurred in the absence of the [independent counsel] law")).
 
 
 27
 In In re Nofziger, 925 F.2d 428 (D.C.Cir., Spec. Div.1991) (per curiam), the Court identified several circumstances under which the "but for" requirement of the Act historically was satisfied. For our purposes, we note that one of these circumstances involved "cases in which if the requirements of the Act, restricting the Attorney General's preliminary investigation, did not exist, ... the case could have been disposed of at an early stage of the investigation, without seeking appointment of independent counsel." Id. at 438. Here, the Attorney General, in her Application to the court requesting the appointment of an independent counsel, stated:
 
 
 28
 Although the Department of Justice would in all likelihood exercise its discretion to decline to prosecute this case as a criminal matter ... I nevertheless am compelled by the terms of the Independent Counsel Act to apply for the appointment of an Independent Counsel.
 
 
 29
 Application for Appointment at 2. Given this statement by the Attorney General, it appears that Segal would not have incurred the attorneys' fees at issue "but for" the requirements of the Act.
 
 D. Fees are "Reasonable" under the Act
 
 30
 We must determine whether Segal's attorneys charged reasonable rates, and whether the time expended by Segal's attorneys on Segal's representation was reasonable. In re Meese, 907 F.2d 1192, 1201 (D.C.Cir., Spec. Div.1990) (per curiam).
 
 
 31
 As to the reasonableness of the rates charged, we note that Segal has submitted two affidavits by prominent Washington, D.C., attorneys Stephen H. Sachs and Joseph E. diGenova, attesting to the reasonableness of the billing rates of Segal's counsel. Based on these affidavits, as well as on other exhibits offered by Segal, we conclude that the hourly rates charged by Segal's counsel ($195-$375) comport with prevailing community standards and are within the realm of reasonableness.
 
 
 32
 [330 U.S.App.D.C. 283] We turn then to the reasonableness of time expended. The IC takes issue with the reasonableness of certain fees and expenses and has requested that the award be reduced accordingly. We will address each of these issues in turn.
 
 
 33
 Sufficiency of billing documentation. In his evaluation of Segal's attorneys' fees application, the IC argues that it is difficult to determine the reasonableness of a number of billing entries because the entries are vague and imprecise. Specifically, he maintains that the billings fail to specify any subject matter, and asks us to impose a reduction of ten percent on the final award as a penalty.
 
 
 34
 We thank the IC for his labors in citing the particular entries he believes have been inadequately documented. But although these entries are perhaps not as detailed as we wish, we find them to be not so insufficient as to warrant a reduction penalty. This is especially true in light of the affidavit submitted by Segal's lead attorney, which describes with some specificity the nature of the work performed on Segal's behalf. See In re North (Corr Fee Application), 56 F.3d 261, 264 (D.C.Cir., Spec. Div.1995) (per curiam) (fees determined to be reasonable after review of time sheets and attorney affidavit that provided detailed information about time billed).
 
 
 35
 Fees and expenses relating to attorney-client privilege. During the IC's investigation Segal was questioned under oath in a two-day interview. Several times during the interview Segal's counsel directed Segal's attention to notes counsel had written on a pad; at another time counsel directed Segal's attention to a typewritten document. Subsequently, counsel was asked to produce these documents to the Office of the Independent Counsel ("OIC"). Initially, Segal's counsel refused, asserting attorney-client and work product privileges. After month-long discussions, the parties resolved the issue. Nevertheless, during the time of the discussions, Segal incurred fees and expenses of approximately $14,000 on the question of whether the documents had to be produced to the OIC. The IC objects to the reimbursement of these fees and expenses. He relies on the Federal Rules of Evidence and guidelines set out for civil depositions to support his view that Segal's counsel had no right to withhold the documents from the OIC, and that his efforts to do so should be viewed as a "self-inflicted wound" for which Congress did not intend the fees and expenses incurred to be paid by the taxpayers.
 
 
 36
 After reviewing the submissions made to the Court with respect to this issue, it appears to us that the interview itself was unusual, in that it was neither a court proceeding nor a civil deposition; consequently, there were no formal governing procedures, except those agreed upon by the parties. It further appears that at the outset of the interview Segal procured the right to have counsel present and to consult with counsel at any time. Under these circumstances we cannot conclude that the assertion of attorney-client and work product privileges by Segal's attorney with respect to the two documents was so unreasonable as to require us to disallow the fees and expenses incurred. Cf. Mullins, 84 F.3d at 466-67.
 
 
 37
 Travel expenses. The IC argues that charges by Segal attorney Ty Cobb of $527.34 for a hotel and $30.68 for meals for a night's stay in Washington, D.C., are not appropriate for reimbursement. We agree. Cobb is resident in the Washington, D.C., office of Hogan and Hartson, and we can discern no justifiable reason why these hotel and meals charges incurred in Washington, D.C., should be charged to the public fisc.
 
 
 38
 Additionally, the IC takes issue with $265.23 in travel expenses charged by attorney Joseph Young, who is resident in the Baltimore office of Hogan and Hartson. As we have noted previously, expenses for travel are not reimbursable "in the absence of some showing that local counsel could not have rendered the service involved and thereby obviated the necessity of employing an attorney" who incurs costs traveling from his home to the work site. In re North (Bush Fee Application), 59 F.3d 184, 194 (D.C.Cir., Spec. Div.1995) (per curiam); see also In re North (Dwyer Fee Application), 120 F.3d 293, 298 (D.C.Cir., Spec. Div.1997) (per curiam). Segal has made no showing that Hogan and Hartson attorneys located in [330 U.S.App.D.C. 284] Washington, D.C., could not have performed the work required.
 
 
 39
 In sum, any travel expenses incurred by Segal's attorneys in Washington, D.C., are not reimburseable, and we will deduct these items from the award in the amount of $823.25.
 
 
 40
 Duplication of effort. The IC objects to certain billings totaling $1585.60 on grounds of duplication of effort. Approximately two-thirds of this amount is related to a meeting on December 16, 1996, with the IC's office that was attended by both Ty Cobb and Joseph Young. The IC argues that having two of the subject's attorneys attend the same meeting is duplicative and therefore not reimburseable.
 
 
 41
 We agree with the IC that in many cases more than one attorney at a meeting with the IC is duplicative. See Mullins, 84 F.3d at 468-69. In this particular meeting, however, the IC "met with counsel for Mr. Segal to apprise them of our existence, to inform them generally of the scope of our inquiry, and to invite a submission outlining their position on whether Mr. Segal had violated ... criminal statutes." Final Report at 6. Having two attorneys at such an important initial meeting with the IC's office is not unreasonably duplicative.
 
 
 42
 On April 9, 1997, Segal submitted his outline, pursuant to the IC's request, concerning alleged violations of criminal statutes. A week later, on April 16, the OIC's office sent a letter to Joseph Young requesting additional information on seven statements contained in the submission. Two days later, on April 18, a telephone conference concerning these requests was held with the IC's office with both Young and Cobb in attendance. The IC argues that Young's preparation for and attendance at this telephone conference is duplicative of Cobb's. Taking into consideration the importance of the submission and OIC's request for additional information, as well as the fact that the letter requesting the information was addressed to Young, we hold that his attendance at the telephone conference concerning the request was not unreasonable duplication.
 
 
 43
 Finally, the IC objects to a February 6, 1997, entry by attorney Stephen Sargent concerning a conference with the IC. We presume that the IC raises a duplication of effort objection regarding this entry because on the same day Ty Cobb has an entry for a "[m]eeting with OIG." We assume, however, that "OIG" is not a typographical error, but rather is the abbreviation for the Corporation for National and Community Service's Office of Inspector General, which had originally referred the matter under investigation to the Department of Justice. Therefore, no deduction will be made concerning the entry.
 
 
 44
 Items not related to defense. The IC states that three billing entries should be deducted because Segal has not met his burden of showing that these entries are relevant to his defense. The first is for $17.50 on November 27, 1996, to "research and retrieve letter to the editor from L. Cutler about independent counsel." We agree with the IC. Segal has not established that such a letter was relevant to his defense.
 
 
 45
 The second entry objected to is dated February 3, 1997, by Joseph Young for $117.50 for a meeting and telephone conference with Ty Cobb, who had redacted his own time for that day. The IC presumes that this redaction was done because the work was not related to Segal's defense, and he therefore argues that Young's time should have been redacted as well. The third entry is objected to for the same reason: on April 22, 1997, Cobb billed for "document review and related telephone conferences with J. Young," but Young's time for that day had been redacted. Again, the IC presumes that the time was redacted because it was not related to Segal's defense, and he therefore argues that Cobb's time should also have been redacted. In both these instances, however, we will presume that the redactions were done in order to avoid billing for duplication of effort, and we will not make any deductions.
 
 
 46
 Miscellaneous. In his review of the billing records, Cobb redacted all of Young's time for June 4, 1997; the IC argues that Young's travel charges for that day, totaling $18.92, should also be excluded. We agree, [330 U.S.App.D.C. 285] and that amount will be deducted from the award.
 
 Conclusion
 
 47
 In accordance with the foregoing analysis, the award shall reflect the following:
 
 
 48
 1. Deduct $1,891.36 in fees that were incurred after Segal's "subject" status ended.
 
 
 49
 2. Deduct $823.25 in travel expenses incurred by Segal's counsel while in Washington, D.C.
 
 
 50
 3. Deduct $17.50 for retrieval of a letter sent to an editor.
 
 
 51
 4. Deduct $18.92 for travel expenses where no fees were incurred.
 
 
 52
 For the reasons set forth above, it is ordered that Segal be awarded $99,767.17 in reasonable attorneys' fees and expenses. The computation is set forth in the appendix.
 
 
 53
 Appendix
Total Fee Request Including Expenses $102,518.20
Deductions in Opinion
1. Fees after "subject" status ended 1,891.36
2. Travel expenses for Washington, D.C. 823.25
3. Letter retrieval 17.50
4. Expenses where no fees incurred 18.92
 -----------
TOTAL OF DEDUCTIONS 2,751.03
TOTAL AWARD $99,767.17