**In re Samuel R. PIERCE, Jr. (Abrams Fee Application).**

**Division No. 89–5.**

United States Court of Appeals, District of Columbia Circuit.

Sept. 28, 1999.

Before: SENTELLE, Presiding, FAY and CUDAHY, Senior Circuit Judges.

### ORDER

PER CURIAM:

This matter coming to be heard and being heard before the Special Division of the Court upon the application of Philip Abrams for reimbursement of attorneys' fees and costs pursuant to section 593(f) of the Ethics in Government Act of 1978, as amended, 28 U.S.C. § 591 *et seq.* (1994), and it appearing to the court for the reasons set forth more fully in the opinion

filed contemporaneously herewith, that the motion is in part well taken, it is hereby

**ORDERED, ADJUDGED,** and **DE-CREED** that the United States reimburse Philip Abrams for attorneys' fees and expenses he incurred during the investigation by Independent Counsels Arlin M. Adams and Larry D. Thompson in the amount of $229,949.80 this 28th day of September, 1999.

Division for the Purpose of Appointing Independent Counsels Ethics in Government Act of 1978, as Amended.

Opinion for the Special Court filed PER CURIAM.

### ON APPLICATION FOR ATTORNEYS' FEES

Philip Abrams petitions this Division of the Court under § 593(f) of the Ethics in Government Act of 1978, as amended, 28 U.S.C. § 591 *et seq.* (1994) (the "Act"), for reimbursement of attorneys' fees in the amount of $389,334.52. Abrams is entitled to reimbursement only if he establishes that these fees "would not have been incurred by him but for the requirements of [the Act]," and meets certain other statutory criteria. Because we find that Abrams has established his entitlement under the statutory criteria for reimbursement of a portion of the fees we will, for the reasons set forth more fully below, allow recovery of $229,949.80 under the Act.

### Background

The Abrams application arises out of an investigation conducted by Independent Counsel ("IC") appointed by this Division under the provisions of the Act, to investigate allegations of abuses, favoritism, and mismanagement at the Department of Housing and Urban Development ("HUD") during the 1980s under the tenure of Secretary Samuel R. Pierce, Jr. We have recently set forth some details of the background of this investigation in our opinions disposing of two earlier applica-

tions from other persons whose conduct became the subject of the investigation. *See In re Pierce (Kisner Fee Application),* 178 F.3d 1356 (D.C.Cir., Spec. Div., 1999) (per curiam); and *In re Pierce (Olivas Fee Application),* 178 F.3d 1350 (D.C.Cir., Spec. Div., 1999) (per curiam). We will therefore not rehash the full account of the investigation, but will only discuss those facts necessary to the resolution of Abrams' petition, to which we will allude as we develop the law governing the disposition.

Abrams joined the Department of Housing and Urban Development in 1981 as a General Deputy Assistant Secretary. He thereafter was promoted to Assistant Secretary and subsequently became Undersecretary of HUD in 1983. During his tenure at HUD, Abrams' responsibilities included a program called the "Moderate Rehabilitation Program" ("MRP") guaranteeing a determined level of rental income to apartment building owners refurbishing apartments rented to persons within specified income limits. Independent Counsel's investigations of allegations, and ultimately prosecutions of wide-ranging corruption within HUD included allegations of unlawful favoritism and other illegalities in the disbursal of funds under the program. After Abrams returned to the private sector in 1984, he became involved in the development and operation of programs receiving funding under the MRP.

The Office of Independent Counsel ("OIC"), as part of its wide-ranging investigation, conducted inquiries into Abrams' involvement and allegations that he and his associates had been the beneficiaries of favoritism. Abrams incurred attorney fees as a result of the investigation by the OIC, as well as separate investigations by the HUD Inspector General, a House Subcommittee, and a Senate Subcommittee. Abrams was never indicted, but did receive a grant of immunity and did provide testimony pursuant to that grant. The application before us seeks reimbursement for attorneys' fees allegedly incurred as a re-

sult of the Independent Counsel's investigation. To establish eligibility for reimbursement, and entitlement to specific amounts, Abrams bears the burden of establishing his qualifications under specific statutory elements, as we discuss below.

### Analysis

#### The Statutory Elements

#### A. Subject

 By its terms, the statute provides reimbursement of fees only to "an individual who is the *subject* of an investigation conducted by an independent counsel." 28 U.S.C. § 593(f)(1) (emphasis added). Though the statute does not define "subject," we have previously held that status as a "mere witness" is not sufficient to meet the elemental requirement of "subject" designation for purposes of the Act; a fee applicant must establish that he is a person whose conduct was within the scope of the independent counsel's investigation in the sense that "the Independent Counsel might reasonably be expected to point the finger of accusation" at him. *In re North (Dutton Fee Application)*, 11 F.3d 1075, 1078 (D.C.Cir., Spec. Div., 1993) (per curiam). Otherwise put, he must not merely have been a witness to the matters under investigation, but a potential defendant of indictments that might arise from that investigation. The filings of Abrams in this application, as well as the responses of the Independent Counsel and the Department of Justice establish that he was not only a subject, but was expressly notified by the Independent Counsel through his counsel that he was "a target of a federal grand jury investigation ... into possible violations of 18 U.S.C. § 371 (conspiracy to defraud the United States), and other provisions of federal criminal law, arising from or related to" HUD programs during the period under investigation. Letter of the OIC, dated September 27, 1991.

 We therefore conclude that Abrams has met the "subject" requirement. There remains, however, a dispute as to the period of time and the portion of the investigation, during which Abrams was a "subject" and during which he would be therefore entitled to full or partial reimbursement of his legal expenses. Abrams asserts that he was a subject from the time of the appointment of the Independent Counsel until the completion of the investigation. The IC asserts that Abrams has the period too long on both ends. He argues that Abrams did not become a subject within the meaning of the Act until September 27, 1991, when the OIC advised Abrams' counsel that his client was a "target." He further argues that Abrams' status as a "subject" did not continue until the OIC issued his final report but only until May 5, 1994, when Abrams received his court ordered immunity. After reviewing the filings of the parties and relevant legal authorities, we conclude that Abrams is correct as to the commencement of his status as a subject but that the IC is correct as to its termination.

 Our reasoning in reaching this conclusion focuses on the definition of the subject as a person "whose conduct was within the scope of the [Independent Counsel] investigation, in the sense that the [Independent Counsel] was examining conduct of his in a way that would lead a reasonably counseled person at the time of incurring the fees to believe that there was a realistic possibility that he would become a defendant." *Dutton*, 11 F.3d at 1079. In the real world, the reasonable apprehension of defendant status does not begin at the receipt of a grand jury subpoena, nor a target letter. When a person, such as Abrams, knows that a grand jury is investigating his conduct, and knows that he is or has been engaged in conduct likely to cause a prosecutor to suspect him of a crime, his objective apprehension of an accusation may commence long before his official designation as a target. Abrams knew that the IC was charged with investigating HUD programs in which he had participated in just such a fashion as to attract the prosecutorial attention of the IC. It was at least reasonable for him to

believe that there was a realistic possibility that he would require a legal defense. Therefore, we can conclude that his status as a subject of the independent investigation began with the appointment of the IC. However, we also conclude that the IC is closer to the mark in defining the termination of Abrams' status as a subject. On May 5, 1994, at the conclusion of the negotiations between Abrams and the OIC, Abrams received court ordered immunity under 18 U.S.C. § 6002. Thereafter, he testified before the grand jury in furtherance of the IC's investigation, under the statutory assurance that his testimony could not be used against him in any prosecution for the matters as to which he testified. The IC argues, and we agree, that thereafter Abrams could not reasonably contemplate that he would become a defendant in any further prosecution arising from the Independent Counsel's investigation.

Abrams points out, correctly, that the immunity conferred upon him under the statute was not transactional. That is, it did not guarantee that he would not be prosecuted. The use immunity arising from compelled testimony under § 6002, "does not confer transactional immunity under which the witness could not be prosecuted at all for the transactions about which he testifies," *United States v. Poindexter,* 859 F.2d 216, 219 (D.C.Cir.1988); *see also Kastigar v. United States,* 406 U.S. 441, 461, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972), but only provides that his testimony would not be used in any such prosecution. He therefore argues that the issuance of the order did not terminate his status as a subject because he could have been prosecuted either for giving a false statement after the grant or even for events before the grant of immunity if sufficient evidence independent of his own testimony were brought forth. This is not a frivolous argument. Indeed, we have held in the past that, on specific facts, a reasonably counseled fee applicant having received a grant of use immunity may nonetheless "believe that there [remains] a realistic possibility that he would become a

defendant." *In re North (Cave Fee Application),* 57 F.3d 1117, 1120 (D.C.Cir., Spec. Div., 1995) (per curiam) (quoting *Dutton,* 11 F.3d at 1079). However, this is not the norm. As we have also held, even though "the grant of use immunity is not dispositive, it does change the reasonable perception" as to whether the immunized witness can apprehend becoming a defendant. *Dutton,* 11 F.3d at 1079. The one case in which we have held a subject status of an immunized witness to continue past the immunity grant and to the conclusion of the investigation involved a fee applicant who demonstrated that other witnesses had provided significant incriminating evidence against him; that the Independent Counsel had not made any indication of termination of his subject status, even at the time of the final report; and that the Independent Counsel had prosecuted two other subjects who had received use immunity. *See generally Cave, supra,* 57 F.3d 1117. No such extraordinary facts are present here. Therefore, the norm prevails.

In short, we conclude that a reasonably counseled person situated as Abrams was would have obtained counsel to defend against the Independent Counsel's investigation and that he met the statutory requirement for subject status. We further conclude, however, that for purposes of the reimbursement provision of the statute, he, like the application in *Dutton,* lost his subject status "at such time as the attorneys he employed in that defense successfully negotiated for him the status of immunized witness as opposed to likely defendant." *Dutton,* 11 F.3d at 1079.

**B. The "But for" Requirement**

■] The only other statutory element necessary for reimbursement eligibility as to which the parties are in dispute is the requirement that subjects of the investigation may be reimbursed only for "attorneys' fees ... which would not have been incurred *but for* the requirements of [the Ethics in Government Act]." 28 U.S.C.

§ 593(f)(1) (emphasis added). *See In re Sealed Case*, 890 F.2d 451, 452 (D.C.Cir., Spec. Div., 1989) (per curiam) ("All requests for attorneys' fees under the Act must satisfy the 'but for' requirement of [the Act]."). It is on this requirement that the earlier fee applications in the Pierce investigation have foundered. *Kisner*, 178 F.3d at 1358–62; *Olivas*, 178 F.3d at 1353–55. In *Kisner* and in *Olivas*, we noted that we have repeatedly held "the most difficult element for a fee applicant to establish under the act is that the fees 'would not have been incurred but for the requirements of [the Act].' " *In re North (Bush Fee Application)*, 59 F.3d 184, 188 (D.C.Cir., Spec. Div., 1995) (per curiam) (quoting *Dutton*, 11 F.3d at 1079). We further noted in those decisions that this difficulty arises not only from the inherent difficulty of establishing a negative but also from the "high component of speculation" involved in this particular negative. *Kisner*, 178 F.3d at 1359; *Olivas*, 178 F.3d at 1353. Nonetheless, as we further noted in the two prior applications, we have held that petitioners

> qualif[ied] for an award of fees in the face of the but-for test in at least four (4) circumstances:

1. When the independent counsel's investigation substantially constituted duplication of the preliminary investigation conducted by the Department of Justice. *In re Olson*, 884 F.2d 1415, 1420 (D.C.Cir., Spec. Div., 1989) (per curiam); *In re North (Dutton Fee Application)*, 11 F.3d at 1080.

2. When the petitioning subject has been "prejudiced by the Department of Justice's failure to comply with the substantial protective features of the Act." *In re Nofziger*, 925 F.2d at 438 (citing *In re Meese*, 907 F.2d 1192 (D.C.Cir., Spec. Div., 1990) (per curiam)).

3. When in the absence of the requirements of the Act "the case could have been disposed of at an early stage of the investigation," without subjecting the petitioning subject to the conditions that led to his incurring the fees sought. *In re Segal (Sagawa Fee Application)*,

151 F.3d 1085, 1089 (D.C.Cir., Spec. Div., 1998) (per curiam) (quoting *In re Nofziger*, 925 F.2d at 438).

4. Not wholly distinct from No. 3, *supra*, when "high public officials [or derivative subjects] were investigated under the Act in circumstances where private citizens would not [have been] investigated." *In re Nofziger*, 925 F.2d at 442; *In re North (Dutton Fee Application)*, 11 F.3d at 1080.

*Kisner*, 178 F.3d at 1359; *Olivas*, 178 F.3d at 1354. These categories are not exhaustive, and an applicant can also meet the "but for" test by showing "some sort of 'unique factual features that but for the requirement of the Act would have permitted a quick termination' of the investigation or otherwise not have subjected him to the fees for which he petitions." *Kisner*, 178 F.3d at 1359 (quoting *Nofziger*, 925 F.2d at 439). *See also Olivas*, 178 F.3d at 1354.

In both *Olivas* and *Kisner* we concluded that neither applicant had put himself in any of the four categories or otherwise established his qualification under the "but for" criterion. Abrams offers multiple justifications for why he has met the "but for" test. All but one duplicate arguments advanced in *Olivas* and *Kisner* and we reject them for the reasons set forth in those opinions. Abrams, however, has put himself in the fourth category at least as to a portion of the legal fees for which he now seeks reimbursement.

█ Abrams makes the "but for" argument on multiple levels. Like the petitioners in *Olivas* and *Kisner*, he first seeks to establish that all attorneys' fees incurred during the entire investigation meet the "but for" standard because the IC conducted an investigation that a professional or politically appointed prosecutor would not have conducted. We rejected that theory in each of the prior cases and we reject it now. As we stated in disposing of both the *Olivas* and *Kisner* petitions, "if the investigative act generating the defensive cost would, in the absence of the Act have

been pursued by other authorities—'had the case been handled by the Department of Justice or other executive authorities rather than the independent counsel'— then Congress did not contemplate the award of counsel fees." *Kisner*, 178 F.3d at 1360 (quoting *Dutton*, 11 F.3d at 1080); *Olivas*, 178 F.3d at 1354 (same). We rejected that argument in both *Olivas* and *Kisner* and reject it now because we simply "cannot hold that the Attorney General and other investigative authorities would not have pursued allegations as deep and widespread as those revealed by the Independent Counsel's investigations had there been no such Act." *Kisner*, 178 F.3d at 1360; *Olivas*, 178 F.3d at 1355.

■ However, Abrams is able to establish something missing in the two prior applications. A portion of the IC's investigation of Abrams' conduct was focused on determining whether he had properly complied with a provision of the HUD handbook, an inquiry not normally pursued in a criminal investigation. This, in a sense, parallels the investigation by an earlier Independent Counsel which we reviewed in *Dutton*. That earlier Independent Counsel investigated activities under an appropriations amendment which had never before or since been treated by "executive branch authorities ... as having criminal consequences." *Dutton*, 11 F.3d at 1080. We held in *Dutton*, among other cases, that defense against that sort of independent counsel investigative activity does meet the "but for" requirement. *See id.; see also In re North (Gadd Fee Application)*, 12 F.3d 252, 256 (D.C.Cir., Spec. Div., 1994) (per curiam). Furthermore, Abrams has demonstrated that the IC pursued criminal allegations involving an alleged violation of a tax regulation by Mr. Abrams' signing a certain low-income tax credit application which amounted to a far more rigorous standard of the Tax Code than ordinarily would have been applied to an ordinary citizen, and we further hold that this also makes the resulting fees under the "but for" requirement. *Cf. In re Donovan*, 877 F.2d 982, 989–90 (D.C.Cir., Spec. Div., 1989) (per curiam). In short,

we conclude that Abrams has established his entitlement to reimbursement of a portion of his legal fees under the "but for" requirement insofar as those fees are generated by the Independent Counsel's pursuit of the handbook violation and of the rigorous standard of the Tax Code.

■ It is difficult, if not impossible, to determine the precise portion of those legal fees incurred by Abrams between March 1, 1990, and May 5, 1994, which would not have been incurred but for the ICs appointment as opposed to those fees that would have been incurred in the event of investigation by traditional constitutional and statutory authorities. Arguably, therefore, we should reject the entire application, as Abrams bears the burden of establishing each element of entitlement. We think, however, that this would be too harsh a rule and too high a standard. Given the difficulty of sorting out the fees attributable to each separate element of an investigation, we doubt that the statutory provision for the award of fees would bear much reason for being if we applied the standard of proof so rigorously. We therefore will subject the fees, after other deductions relating to the date requirement established above and the reasonableness standards we set forth below, to a further reduction of twenty-five percent (25%) to reflect the indisputable fact that some portion of the fees would have been incurred with or without the passage of the Act.

As there is no serious dispute as to any other element of eligibility for the award of attorneys' fees, we will enter an award in Abrams' favor as to those fees incurred by him which meet the standards applicable to fee awards under the Act.

C. Reasonableness

■■ *Sufficiency of billing documentation.* To establish that he is entitled to reimbursement for particular items of attorneys' fees under the Act, the fee petitioner must provide the court with the attorneys' billing records that describe the

work performed in sufficient detail to establish that the work is reasonably related to a defense against the IC's investigation. *See, e.g., In re North (Dwyer Fee Application)*, 120 F.3d 293, 297 (D.C.Cir., Spec. Div., 1997) (per curiam); *In re Donovan*, 877 F.2d at 994. In their evaluations, the IC and the DOJ point out that a number of billing entries do not meet these criteria. Both the IC and the DOJ note that the billing records contain many entries that inadequately describe the work performed—giving only very generalized descriptions, such as "Various calls" or "Review of materials." *See, e.g.,* Fulbright & Jaworski, Billing Memorandum for 7/25/91 to 8/29/91, Appendix, Memorandum of Points and Authorities in Support of Petition of Philip Abrams for Reimbursement of Attorneys' Fees and Costs. As we have held previously, adequate documentation of legal work performed is a necessary ingredient for the reimbursement of attorneys' fees, *see In re Meese*, 907 F.2d 1192, 1204 (D.C.Cir., Spec. Div., 1990) (per curiam), and inadequate documentation "makes it impossible for the court to verify the reasonableness of the billings, either as to the necessity of the particular service or the amount of time expended on a given legal task." *In re Sealed Case*, 890 F.2d at 455. In prior cases we have imposed a ten percent (10%) reduction of the final fee award for similar insufficiencies, *see, e.g., In re North (Gardner Fee Application)*, 30 F.3d 143, 147–48 (D.C.Cir., Spec. Div., 1994) (per curiam); *In re Meese*, 907 F.2d at 1204, and we will impose the same reduction here.

■ Additionally, the billing entries for July 27 through August 5, 1993, totaling $4420, have no work description whatsoever. We will deduct this amount from the total amount prayed for, as these omissions "do[ ] not allow the court to evaluate whether the time billed was spent on issues that have been found not within the contemplation of § 593(f) and this compels the court to exclude such hours." *In re Donovan*, 877 F.2d at 995.

■ *Defensive monitoring.* The IC points out that several billing entries appear to constitute "defensive monitoring," that is, the observation of other ongoing investigations and prosecutions conducted by the IC. As we have previously suggested, this may be a useful and even valuable activity for defense attorneys to perform, but it is not within the realm of reasonableness generally available to criminal defendants, nor is it one which we believe Congress contemplated as within the realm of reasonableness for which the taxpayers should reimburse subjects of independent counsel investigations. *See Gardner*, 30 F.3d at 147 (rejecting fees for "the 'defensive monitoring' of the ongoing prosecution [brought by the Independent Counsel]"); *In re North (Fee Applications of Shields and Gruner)*, 53 F.3d 1305, 1308 (D.C.Cir., Spec. Div., 1995) (per curiam) (holding that "fees connected to the monitoring of the on-going prosecution of Iran–Contra defendants" were not reimbursable). Consistent with our precedent, we must apply the same standard to the Abrams application and reject the fee for defensive monitoring. A review of the billing documents indeed reveals a number of entries that fall into this category. Many of these entries are grouped with other entries for the same date, and for purposes of making the deductions we will assume that each entry for that date took up an equal amount of time. We will thus divide the number of entries for each date into the amount billed, and deduct that amount from the total amount petitioned.

| Date | Defensive Monitoring Entry | Number of Entries for Date | Amount Billed for Date | Amount Deducted |
|------|---------------------------|---------------------------|-----------------------|-----------------|
| 4/16/92 | "review of V. Cruse indictment" | 3 | $280 | $93.33 |
| 5/7/92 | "telecon w/ S. Wehner re: status of D. Dean trial proceedings" | 3 | $240 | $80.00 |
| 5/21/92 | "review pleadings filed in Dean case" | 4 | $360 | $90.00 |

| Date | Defensive Monitoring Entry | Number of Entries for Date | Amount Billed for Date | Amount Deducted |
|---|---|---|---|---|
| 5/28/92 | "Review of material in Dean case" | 1 | $150 | $150.00 |
| 6/03/92 | "Took notes at Debbie Dean's hearing with Judge Gesell and prepared a memo for the file" | 1 | $220 | $220.00 |
| 6/04/92 | "Proofed and edited memo to file regarding Debbie Dean's hearing with Judge Gesell" | 1 | $110 | $110.00 |
| 6/09/92 | "telecon w/counsel for D. Dean re: status" | 3 | $200 | $66.66 |
| 6/15/92 | "Attended Debbie Dean's hearing and wrote memo to the file" | 1 | $165 | $165.00 |
| 6/16/92 | "Edited memo to file on 6/15/92 Dean hearing" | 1 | $41.25 | $41.25 |
| 7/07/92 | "various telecons re: Dean superseding indictment" | 2 | $200 | $100.00 |
| 7/08/92 | "Telecon w/D. Dean's counsel; review Dean superseding indictment" | 1 | $280 | $280.00 |
| 7/09/92 | "Review of Dean indictment" | 1 | $150 | $150.00 |
| 7/13/92 | "Attended Dean hearing and wrote memo to file" | 1 | $137.50 | $137.50 |
| 7/14/92 | "Read Dean's superseding indictment" | 1 | $110 | $110.00 |
| 7/29/92 | "conference w/R. Beckler re: status of Dean case" | 2 | $200 | $100.00 |
| 8/06/92 | "Telecon w/C. Feldman re: status of Dean case" | 3 | $120 | $40.00 |
| 10/14/92 | "Telecon with P. Abrams re: DeBartolomeis plea; telecon with C. Feldman re: same; telecon with R. Beckler re: same" | 1 | $120 | $120.00 |
| 10/15/92 | "Review pleadings re: S. DeBartolomeis plea" | 1 | $160 | $160.00 |
| 11/10/92 | "review recent developments in Wilson case" | 3 | $280 | $93.33 |
| 12/11/92 | "review Demery superseding indictment" | 4 | $1240 | $310.00 |
| 12/30/92 | "Review of Demery indictment" | 3 | $150 | $50.00 |
| 2/10/93 | "Review Winn plea agreement and related materials" | 4 | $360 | $90.00 |
| 2/22/93 | "Meeting with J. Hume and R. Beckler r: Demery indictment" | 1 | $585 | $585.00 |
| 3/08/93 | "Prepare for meeting with P. Abrams re: Demery indictment; review documents re: same; meet with P. Abrams re: Demery indictment and re: status." | 1 | $675 | $675.00 |
| 4/21/93 | "Various telecons with P. Abrams re: Wilson sentencing" | 2 | $45 | $22.50 |
| 9/17/93 | "review Queenan indictment" | 3 | $225 | $75.00 |
| 9/20/93 | "telecon with A. Pings re: status of Queenan prosecution" | 4 | $225 | $56.25 |
| 9/29/93 | "Review of material and attendance at trial of Deborah G. Dean" | 1 | $330 | $330.00 |
| 9/29/93 | "attend sessions of D. Dean trial" | 5 | $585 | $117.00 |
| 3/18/94 | "telecon with S. Rosenbaum re: outcome of Queenan trial" | 3 | $160 | $53.33 |
| 3/25/94 | "Telecon with A. Pings re: outcome of Queenan trial" | 3 | $240 | $80.00 |
| 4/11/94 | "attending sentencing of P. Winn at U.S. District court; conference with M. McGovern regarding the same" | 1 | $48.75 | $48.75 |
| 4/25/94 | "review Strauss plea" | 3 | $440 | $146.66 |

Total Deduction: $4946.56

*Miscellaneous.* Finally, on 12/15/92 is the entry, "telecon with P. Abrams and B. Kaufman re: divorce proceedings." We do not see how this entry could in any way be related to Abrams' defense, and therefore, again using the formula from above, divide the three entries from that date into the $1320 billed, and subtract the quotient of $440 from the amount prayed.

## Conclusion

Abrams seeks reimbursement for attorneys' fees in the amount of $389,334.52. In accordance with the analysis set forth above, we will make the following deductions from this amount:

1. $11,740.39 for time and expenses billed before the Independent Counsel was appointed on March 1, 1990.

2. $27,121.20 for time and expenses billed after Abrams' grant of immunity on May 6, 1994.

3. $4420 for billing entries for July 27 through August 5, 1993, for which there are no work descriptions.

4. $4946.31 for time expended on defensive monitoring.

5. $440 for work done on "divorce proceedings."

6. 10% deduction for insufficient billing descriptions.

7. 25% deduction reflecting the court's estimate of fees that would have been incurred without the passage of the Act.

For the reasons set forth above, it is ordered that Abrams be awarded $229,949.80 in reasonable attorneys' fees and expenses. The computation is set forth in the appendix.

## Appendix

| | | |
|---|---|---:|
| Total Fee Request | | $389,334.52 |
| Deductions in Opinion | | |
| 1. | Fees before IC appointed | 11,740.39 |
| 2. | Fees after "subject" status ended | 27,121.20 |
| 3. | Billing entries with no work descriptions | 4420.00 |
| 4. | Time expended on defensive monitoring | 4946.56 |
| 5. | Work performed on divorce proceedings | 440.00 |
| | Total of specific deductions | 48,668.15 |
| | Request minus specific deductions | 340,666.37 |
| 6. | 10% deduction for insufficient descriptions | 306,599.73 |
| 7. | 25% deduction reflecting fees incurred without Act | 229,949.80 |
| | **TOTAL AWARD** | **$229,949.80** |