# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Filed July 18, 2006

Division No. 95-1

IN RE: CISNEROS
(NEEDLE FEE APPLICATION)

———

Division for the Purpose of
Appointing Independent Counsels
Ethics in Government Act of 1978, As Amended

———

Before: SENTELLE, *Presiding*, FAY and REAVLEY, *Senior Circuit Judges*.

### O R D E R

This matter coming to be heard and being heard before the Special Division of the Court upon the petition of Martin Needle for reimbursement of attorneys' fees and costs pursuant to section 593(f) of the Ethics in Government Act of 1978, as amended, 28 U.S.C. § 591 *et seq.* (2000), and it appearing to the court for the reasons set forth more fully in the opinion filed contemporaneously herewith, that the petition is for the most part well taken, it is hereby

**ORDERED, ADJUDGED,** and **DECREED** that Martin Needle shall be reimbursed for attorneys' fees and expenses in the amount of $22,390.86.

*PER CURIAM*
For the Court:
Mark J. Langer, Clerk
By:
Marilyn R. Sargent
Chief Deputy Clerk

# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Filed July 18, 2006

Division No. 95-1

IN RE: CISNEROS
(NEEDLE FEE APPLICATION)

———

Division for the Purpose of
Appointing Independent Counsels
Ethics in Government Act of 1978, As Amended

———

Before:   SENTELLE, *Presiding*, FAY and REAVLEY, *Senior Circuit Judges*.

## ON APPLICATION FOR ATTORNEYS' FEES

*PER CURIAM*: Martin Needle petitions this Court under section 593(f) of the Ethics in Government Act of 1978, as amended, 28 U.S.C. §§ 591-599 ("the Act"), for reimbursement of attorneys' fees in the amount of $23,746.77 that he claims were incurred during and as a result of the investigation conducted by the Independent Counsel. Because we find that Needle has established his entitlement under the statutory criteria for reimbursement of a portion of the fees we will, for the reasons set forth more fully below, allow recovery of $22,390.86.

## Background

In 1994 allegations arose that Henry Cisneros, then-Secretary of Housing and Urban Development, during his appointment process may have made false statements to the FBI concerning alleged payments made by him to his mistress. After conducting a preliminary investigation pursuant to the Independent Counsel statute, the Attorney General requested that this court appoint an independent counsel to further investigate the matter, and the appointment was made on May 24, 1995. Approximately one and a half years after his appointment, the Independent Counsel ("IC" or "OIC") requested that the Attorney General expand his jurisdiction to include investigation of possible tax violations by Cisneros in years 1989, 1991, 1992, and 1993. Apparently based in part on a recommendation from the IRS, this request was granted only for the year 1992.

During his subsequent investigation, the IC apparently came into possession of an internal IRS memorandum (hereinafter "the improprieties memorandum") that contained allegations of impropriety by the IRS Washington, D.C., office in its decision not to recommend prosecution of Cisneros for the remaining tax violations. The IC, beginning in 1997, then undertook his own investigation into whether obstruction of justice occurred in the decisions of certain DOJ and IRS officials in not authorizing the investigation or prosecution of Cisneros for these possible tax violations. Martin Needle, the fee applicant here, was investigated by the IC in his capacity as an IRS attorney who had reviewed the Cisneros case.

In 1998 this "obstruction investigation" was temporarily suspended, until 2000. After resumption, Needle was called before the grand jury after being granted "informal use immunity." He was never indicted and now, pursuant to the

Act, seeks reimbursement for his attorneys' fees expended in this matter, in the amount of $23,746.77.

**Discussion**

Unlike persons investigated by Executive Branch prosecutors, the subjects of investigations under the Ethics in Government Act are entitled to reimbursement of attorneys' fees expended in defense against such investigation under limited circumstances delineated in 28 U.S.C. § 593(f)(1), which states:

> Upon the request of an individual who is the subject of an investigation conducted by an independent counsel pursuant to this chapter, the division of the court may, if no indictment is brought against such individual pursuant to that investigation, award reimbursement for those reasonable attorneys' fees incurred by that individual during that investigation which would not have been incurred but for the requirements of this chapter.

In applying this statute, this court has held repeatedly that as "a waiver of sovereign immunity it is to be strictly construed." *In re Nofziger*, 925 F.2d 428, 438 (D.C. Cir., Spec. Div., 1991) (per curiam). Therefore, we will award counsel fees only to a petitioner who is unindicted and who demonstrates that:

(1) he is a "subject" of such investigation;

(2) the fees were incurred "during" the investigation;

(3) the fees would not have been incurred "but for" the requirements of the Act; and

(4) the fees are "reasonable."

*In re Mullins (Mullins Fee Application)*, 84 F.3d 459, 463 (D.C. Cir., Spec. Div., 1996) (per curiam) (quoting *In re North (Cave Fee Application)*, 57 F.3d 1117, 1119 (D.C. Cir., Spec. Div., 1995) (per curiam)). As to each of these necessary requirements, the petitioner bears the burden of proof. *See, e.g.*, *In re North (Reagan Fee Application)*, 94 F.3d 685, 690 (D.C. Cir., Spec. Div., 1996) (per curiam). There is apparently no dispute that Needle incurred his attorneys' fees "during" the IC's investigation. The remainder of the discussion will therefore address the "subject," "but for," and "reasonable" requirements.

### A. "Subject" Status

We have previously defined the term "subject" as a person whose conduct is within the scope of the independent counsel's investigation such that "the Independent Counsel might reasonably be expected to point the finger of accusation" at him. *In re North (Dutton Fee Application)*, 11 F.3d 1075, 1078 (D.C. Cir., Spec. Div., 1993) (per curiam); *see also In re North (Shultz Fee Application)*, 8 F.3d 847, 850 (D.C. Cir., Spec. Div., 1993) (per curiam). Additionally, in *Shultz* we held that, under any definition of the term, the criterion for "subject" status is squarely met when the independent counsel tells a person that he is in fact a subject. 8 F.3d at 850. Needle asserts that on or about May 12, 1998, the IC's office informed him that he was a subject of the investigation; he consequently claims that he has satisfied the subject requirement under *Shultz*. And although he was subsequently granted use immunity for his testimony before the grand jury, Needle argues that he nevertheless still retained subject status in that he "remained under the threat of prosecution until the prosecutor was satisfied with his entire testimony."

The Department of Justice, in its evaluation of Needle's fee application, notes that although Needle was informed that he was a "subject" of the IC's investigation, he was subsequently granted use immunity and fees incurred after immunity has been conferred – even use immunity – are generally not reimbursable. *In re Pierce (Abrams Fee Application)*, 190 F.3d 586, 591 (D.C. Cir., Spec. Div., 1999). The DOJ asserts that for an applicant nevertheless to believe that there remained a realistic possibility that he would become a defendant he must show "extraordinary facts." *See id.* at 591. But the DOJ defers to the OIC to "shed further light on whether Mr. Needle was treated in a manner that would lead him reasonably to believe that he was at all times a continuing subject of the Independent Counsel's investigation."

In its evaluation, the OIC does not dispute Needle's assertion that it told him on May 12th that his status was that of subject. But the IC claims that on May 20th, in a conversation between the OIC and Needle's attorney, the OIC stated that it considered Needle "more of a witness than a subject." Furthermore, according to the OIC, its obstruction investigation was soon thereafter temporarily suspended until early 2000, and upon resumption it informed Needle's attorney that Needle's status "may be that of a witness." Additionally, the OIC notes that Needle was given informal use immunity, and that it is not the norm for a person to be considered a subject after receiving such immunity. According to the OIC, only "extraordinary circumstances" justify a witness's continued apprehension after being immunized, and no such circumstances exist here. To the contrary, argues the OIC, "the grant of immunity to Needle should have strengthened what should have been his already changed 'reasonable perception' that he was not a subject of the OIC's investigation." In sum, according to the IC, after May 20, 1998, Needle was treated as a cooperating witness, and this fact is further evidenced by the comparable treatment of Needle in the IC's Final Report. Taking all of the above into

consideration, the IC argues that at no time should Needle "have believed that he was in serious jeopardy of becoming a defendant . . . except perhaps before May 20, 1998, for which he claims $2375 in fees."

There appears to be no dispute that around May 12, 1998, the OIC told Needle that he was considered a subject of the investigation. As such, he fulfills the "subject" requirement of the Act. *See In re Madison Guar. Sav. & Loan (Lindsey Fee Application)*, 346 F.3d 1111, 1114-15 (D.C. Cir., Spec. Div., 2003) (per curiam) ("Although the Act does not define 'subject,' as we have stated before, under any definition of 'subject' this element will be squarely met for fees incurred after the Independent Counsel's office informs an individual that he is a subject." (internal quotation marks and citation omitted)). The only question appears to be how long that status was held. According to the IC, Needle's subject status ended a little over a week later, when his attorney was told by the OIC that Needle was "more of a witness than a subject," and that at no time thereafter should he have believed that he was in serious jeopardy of becoming a defendant. But although the IC strives to paint Needle as a witness and not a subject after May 20, 1998, the IC's own words appear to belie that claim. First, the statement made to Needle's attorney on May 20, 1998, does not by itself rule out his status as a subject: He may have been considered "more" of a witness, and thus by implication "less" of a subject, but a subject all the same. Furthermore, after resuming its "obstruction investigation" in 2000, the OIC sent a letter to Needle's attorney concerning the forthcoming issuance to Needle of a grand jury subpoena. Although the letter provided Needle with informal use immunity, and stated that he "may be that of a witness" with respect to the grand jury, it nevertheless stated that it "could not assure [the attorney] that [Needle] was not a subject." It should also be noted that in its evaluation the OIC relies on this court's discussion in *Abrams*,

190 F.3d at 591, wherein it was noted that it "is not the norm" for a person to be considered a subject after receiving use immunity. However, in the relevant case cited in that discussion, *Dutton*, 11 F.3d at 1079, as well as in *Pierce* itself, the fee applicants were granted *formal* use immunity under the Federal Use Immunity Statute, 18 U.S.C. § 6002. It appears that if such immunity had been granted here, instead of the "informal use immunity" as stated in the OIC's February 21, 2001, letter, the OIC's position concerning Needle's post-immunity status would be considerably stronger.

In sum, it appears that the OIC never definitively retracted Needle's "subject" status. Consequently, for the full time period in which Needle seeks fee reimbursement, it appears that he "reasonably believed that there was a realistic possibility that he would become a defendant." *In re North (Gardner Fee Application)*, 30 F.3d 143, 146 (D.C. Cir., Spec. Div., 1994) (per curiam) (internal quotation marks and citation omitted).

*B. Fees Not Incurred "But For" the Requirements of the Act*

The Act requires that to be reimbursable, attorneys' fees must "not have been incurred *but for* the requirements of [the Act]." 28 U.S.C. § 593(f)(1) (emphasis added). Accordingly, "[a]ll requests for attorneys' fees under the Act must satisfy the 'but for' requirement of" the Act. *In re Sealed Case*, 890 F.2d 451, 452 (D.C. Cir., Spec. Div., 1989) (per curiam). The purpose of limiting fee awards to fees that would not have been incurred "but for" the Act is to ensure that "officials [and here derivative 'subjects'] who are investigated by independent counsels will be subject only to paying those attorneys' fees that would normally be paid by private citizens being investigated for the same offense by" federal executive officials such as the United States Attorney. *Id.* at 452-53 (citing S.REP. NO. 97-496, 97th Cong.,

2d Sess. 18 (1982), *reprinted in* 1982 U.S.C.C.A.N. 3537, 3554 (referring to "fees [that] would not have been incurred in the absence of the [Act]")).

In addressing the "but for" requirement, Needle first cites *Gardner*, 30 F.3d at 146, for the proposition that this requirement is to ensure that those who have been investigated by an independent counsel should only have to pay those attorneys' fees that would have been paid if the same offense had been investigated by the Department of Justice. Needle then asserts that it was in his "public and official position with the IRS" that he was involved in the Cisneros tax matter and subsequently questioned by the OIC about that involvement. Claiming that "[b]ut for his official duties and responsibilities, [he] would never have been the subject of the investigation and would not have been in a position to retain counsel to provide advice and guidance through the process," Needle goes on to argue that the attorneys' fees at issue would not have been incurred "but for" the Independent Counsel investigation involving Cisneros.

The OIC in its evaluation disputes Needle's claim to fulfillment of the "but for" requirement. To begin, the OIC cites *In re Pierce (Kisner Fee Application)*, 178 F.3d 1356, 1361 (D.C. Cir., Spec. Div., 1999) (per curiam), arguing that in order for Needle to fulfill the requirement "it is necessary for Needle to establish that *special limitations and procedures of the Act*, such as those manifested in its unique two-step procedure, forced him to incur legal costs that he otherwise would not have incurred." The OIC then takes issue with Needle's cite to *In re Mullins*, claiming that in that case the "but for" requirement was satisfied because of redundant State Department and DOJ investigations prior to the independent counsel investigation, which is not the situation here. In closing, the OIC argues that Needle's assertion that he "was a public official does not begin

to satisfy his burden of showing that he would not have incurred some or all of the attorneys' fees claimed in his application but for the Independent Counsel Act."

In contrast, the DOJ in its evaluation agrees with Needle that he has satisfied the "but for" requirement. First, the Department notes that although "it is appropriate" for it to take over any remaining investigations of a closing independent counsel office, no such action occurred here. According to the DOJ, this case is thus analogous to *In re Segal (Segal Fee Application)*, 145 F.3d 1348, 1352 (D.C. Cir., Spec. Div., 1998) (per curiam), and *In re Olson (Perry Fee Application)*, 892 F.2d 1073, 1074 (D.C. Cir., Spec. Div., 1990) (per curiam), in that here, as there, "this Court . . . found the 'but for' test satisfied based on a lack of prosecutorial interest."

Second, in the DOJ's opinion the allegations investigated by the IC "appear much more akin to bureaucratic conflict than suggestive of criminal behavior." In support of this statement, the DOJ asserts that the central issue investigated by the Independent Counsel was a dispute between the IRS's regional office and Washington office over whether there was sufficient evidence to criminally prosecute Cisneros for tax violations. Dissecting the "improprieties memorandum," the DOJ argues that "the complaints in the memorandum were in the nature of bureaucratic conflict," and further that

> [t]hese sorts of allegations . . . would not in the normal course, without additional evidence, generate a criminal investigation of government employees carrying out their respective duties in evaluating the matters in question.

Third, the DOJ points out that the IC, after investigating Cisneros for tax year 1992, ultimately decided not to indict

because willfulness could not be established - the same reason that led the IRS to decline referral in the first place. And the DOJ also notes that it too declined to refer other tax years to the IC, leading to the conclusion that in the end the IC, the DOJ, and the IRS Washington office were all in agreement that prosecution of the tax matters was not warranted. Under such circumstances, asserts the DOJ, "the conflict would not have been the topic of a criminal investigation 'but for' the existence of the Independent Counsel statute."

As the DOJ suggests, the matter looked into in the IC's "obstruction investigation" appears to have been nothing more than a "bureaucratic conflict." In several fee applications considered at the end of the Iran/Contra independent counsel investigation, this court noted that during that investigation the Independent Counsel treated efforts to circumvent the Boland Amendments as a criminal conspiracy. *See, e.g., Dutton*, 11 F.3d at 1080; *Gardner*, 30 F.3d at 146. The court stated that no executive branch authorities, including a politically appointed Attorney General, would have subjected such attempts to criminal prosecution, and thus the "but for" requirement was fulfilled as no fees would have been incurred "but for" the appointment of the Independent Counsel. *Dutton*, 11 F.3d at 1080. The situation here appears to be analogous - executive branch authorities do not treat "bureaucratic conflicts" as criminal, and the Department of Justice says as much in its evaluation: "an internal disagreement of this sort over a prosecution decision would rarely, if ever, lead to a criminal investigation by the Department of Justice."

Furthermore, addressing the "but for" requirement in *Nofziger*, 925 F.2d at 444, we held that the appropriate question was whether "Nofziger, absent the statute, [would] have been similarly investigated and prosecuted by the Department of Justice . . . ." In its evaluation the Department strongly opines

more than once that the answer to that question here is in the negative:

> [i]t is unlikely that an investigation of the pertinent matters in this case would have been conducted by the Department of Justice absent the existence of the Independent Counsel statute.
>
> It is exceedingly unlikely that the core allegations that gave rise to the Independent Counsel's investigation with respect to IRS employees would have led to an investigation by an ordinary prosecutor.

In sum, it appears that in the absence of the Act an investigation of this matter would *not* have been undertaken by the Department of Justice, and Needle would therefore not have incurred attorneys' fees "but for" the appointment of the Independent Counsel.

## C.  Fees Are "Reasonable" Under the Act

This court must determine whether Needle's attorneys charged reasonable rates, and whether the time expended by Needle's attorneys on his representation was reasonable. *In re Meese*, 907 F.2d 1192, 1201 (D.C. Cir., Spec. Div., 1990) (per curiam).

Although the DOJ asserts that "the fees generally are adequately documented and appear to be reasonable," the OIC argues that the following should be rejected as unreasonable: 1) those expenses for travel, hotel, taxi, and phone calls incurred because Needle's attorney practices in Miami, Florida and had to travel or make calls to Washington, *see In re North (Bush Fee Application)*, 59 F.3d 184, 194 (D.C. Cir., Spec. Div., 1995) (per curiam); and 2) insufficiently documented expenses for long

distance telephone calls, photocopies, and courier service.

From the entries contained in the billing documents for the attorneys' fees, it appears that the entry descriptions are sufficient and the time expended reasonable. But, as the IC pointed out, some of the expenses sought are problematical. First, Needle's attorney practiced in Miami, and in the first or second week of March, 2001, apparently traveled to Washington, D.C., on the Needle matter. Total expenses sought for this trip: $1280.91. In *Bush*, we noted that

> in the absence of some showing that local counsel could not have rendered the service involved and thereby obviated the necessity of employing an attorney who must necessarily spend billable time travelling from his normal home to the work site, we do not find such travel to be within the reasonableness contemplated by Congress.

*Id.* at 194. As no excusing showing has been made by Needle, the expenses for this trip will not be reimbursed.

Second, the expense pages contain multiple entries for "Long Distance Telephone" calls and "Photocopies," as well as an entry for "Courier," all of which are not otherwise explained. The total amount sought for these entries is $158.36. This court has in the past made deductions for comparable expenses because of a lack of supporting documentation, *see In re Madison Guar. Sav. & Loan (Marceca Fee Application)*, 366 F.3d 922, 929 (D.C. Cir., Spec. Div., 2004) (per curiam), and we will do so here, reducing the amount by $75.00.

Total deductions for expenses: $1280.91 + $75.00 = $1355.91.

In sum, Needle has requested that his attorneys' fees be reimbursed in the amount of $23,746.77. Subtracting $1355.91 in expenses leaves a remainder of $22,390.86.

## Conclusion

In light of the foregoing discussion, Martin Needle shall be reimbursed for attorneys' fees and expenses in the amount of $22,390.86.