**In re Oliver NORTH (Gardner Fee Application).**

**Division No. 86–6.**

United States Court of Appeals,
District of Columbia Circuit.

(Division for the Purpose of Appointing Independent Counsels Ethics in Government Act of 1978, as Amended).

July 29, 1994.

Before: SENTELLE, Presiding, BUTZNER and SNEED, Senior Circuit Judges.

### ORDER

*PER CURIAM.*

This matter coming on to be heard and being heard before the Special Division of the Court, upon the application of Norman Gardner, Jr. for reimbursement of attorneys' fees under section 593(f) of the Ethics in Government Act of 1978, as amended, 28 U.S.C. § 591 *et seq.* (1987), and it appearing to the Court for the reasons more fully set forth in the opinion filed contemporaneously herewith, that the motion is well taken, in part, it is hereby

ORDERED, ADJUDGED and DE-CREED that the United States reimburse Norman H. Gardner, Jr. for attorneys' fees he incurred during the investigation by Independent Counsel Lawrence E. Walsh in the amount of $53,120.74 this 29th day of July, 1994.

Before: SENTELLE, Presiding; BUTZNER and SNEED, Senior Circuit Judges.

Opinion for the Special Court filed per curiam.

*PER CURIAM:*

Pursuant to section 593(f) of the Ethics in Government Act of 1978, as amended, 28 U.S.C. § 591 *et seq.* (1988) ("the Act"), Norman H. Gardner, Jr., an aide to Central Intelligence Agency ("CIA") Deputy Director for Operations Clair George from 1985 through 1987, requests reimbursement for $84,386.77 in attorneys' fees incurred as a result of the Iran/Contra investigation conducted by Independent Counsel Lawrence E. Walsh. The Act authorizes this court to reimburse the "subject" of an Independent Counsel investigation against whom no in-

dictment is brought for "reasonable attorneys' fees incurred ... during th[e] investigation which would not have been incurred but for the requirements of [the Act]." 28 U.S.C. § 593(f)(1).[1] Because we find Gardner's application in large part meritorious, we allow the greater portion of the fees sought.

## I. BACKGROUND

On December 19, 1986, this court appointed Independent Counsel Walsh "to investigate ... alleged violations of federal criminal laws ... in connection with the sale or shipment of military arms to Iran and the transfer or diversion of funds realized in connection with such sale or shipment." *In re North (Shultz Fee Application),* 8 F.3d 847, 849 (D.C.Cir.1993) (per curiam). For purposes of this opinion, we note that Gardner served as Special Assistant to Clair George, Deputy Director of Operations of the CIA, during the time that the events constituting the substantive basis of the Iran/Contra matter took place. By virtue of his position, Gardner acted as a cooperating witness in the Independent Counsel investigation from February 1987 to April 1991. Then, in July of 1991, he received a grand jury subpoena identifying him as a "subject" of that investigation. Shortly thereafter, he retained counsel to represent him throughout the remainder of the investigation. This fee request follows.

## II. DISCUSSION

■ To recover attorneys' fees under the Act, Gardner must establish that he incurred such fees while he was a "subject" of the Independent Counsel investigation, that he would not have incurred these fees "but for the [Act's] requirements," and that the fees were reasonable. 28 U.S.C. § 593(f)(1).[2] We consider each requirement in turn.

---

1. In his original application for fees, Gardner sought $94,413.49 in attorneys' fees and expenses. However, as Gardner concedes, this figure was based on an erroneous computation. The new figure is accounted for by increasing the "fees for fees" deduction in the original application to $19,989.00, deducting $91.72 for attorney

meals, and increasing the fees for commenting on the Final Report to $23,127.53.

2. An applicant for fees must also show that "no indictment [wa]s brought against [him] pursuant to th[e Independent Counsel] investigation." 28 U.S.C. § 593(f)(1). In the instant case, this requirement is "so plainly met that [it] warrant[s]

## A. *Gardner's Subject Status*

■ For purposes of the fee reimbursement provision, a "subject" is a person who "at the time of incurring the fees involved in the application, knew that his conduct was within th[e] scope [of an investigation] in such a fashion that 'the independent counsel might reasonably be expected to point the finger of accusation' at him." *Shultz*, 8 F.3d at 850 (quoting *In re North (Dutton Fee Application)*, 11 F.3d 1075, 1078 (D.C.Cir. 1993) (per curiam)). In other words, the term "subject" is roughly equivalent to "potential defendant", *Dutton*, 11 F.3d at 1078–79.

■ Gardner falls squarely within the definition of "subject." He retained counsel only after the Independent Counsel issued a grand jury subpoena designating him as a subject of its investigation on July 16, 1991. At the time he retained counsel, therefore, Gardner reasonably believed "that there was a realistic possibility that he would become a defendant." *Id.* at 1079. His status as subject continued until December 1992, when two of his former CIA colleagues, Clair George and Duane Clarridge, received presidential pardons. Only at this time did the Independent Counsel discount the prospect of a possible future indictment against Gardner.[3]

## B. *"But For" Requirement*

■ We also have no trouble concluding that Gardner's attorneys' fees "would not have been incurred *but for* the requirements of [the Act]." 28 U.S.C. § 593(f)(1) (emphasis added). The purpose of the "but for" requirement is to ensure that individuals " 'who are investigated by independent counsels will be subject only to paying those attorneys' fees that would normally be paid by private citizens being investigated for the same offense by' federal executive components such as the United States Attorney."

no discussion." *See In re North (Shultz Fee Application)*, 8 F.3d 847, 850 n. 1 (D.C.Cir.1993) (per curiam).

3. We reject any suggestion that Gardner's status as subject in the Iran/Contra investigation ended on September 17, 1992, when the Independent Counsel indicated that "he intended not to refer

*Dutton*, 11 F.3d at 1080 (quoting *In re Sealed Case*, 890 F.2d 451, 452–53 (D.C.Cir.1989)). Here, Gardner incurred attorneys' fees as a consequence of the Independent Counsel's determination "to treat as a criminal conspiracy efforts to circumvent the *Boland* Amendments." *Id.* The *Boland* Amendments were riders to certain defense appropriations acts that proscribed the CIA from funding or participating in efforts to overthrow the Nicaraguan government. *See* Department of Defense Appropriation Act, 1983, Pub.L. No. 97–377, 96 Stat. 1833, 1865 (1982). As we determined in *Dutton*, 11 F.3d at 1080, however, "executive branch authorities never treated circumvention of the *Boland* Amendments as having criminal consequences." Nor would "a politically appointed Attorney General ... have subjected such attempts to criminal prosecution." *Id.* Hence, Gardner would never have incurred attorneys' fees "but for" the appointment of an independent counsel under the Act.

## C. *Reasonableness*

■ In addition to the above requirements, we must also determine "whether [Gardner's] attorney[ ] charged a reasonable hourly rate, whether the time expended by the attorney[ ] on the case was reasonable, and whether the foregoing requirements are adequately documented." *In re Meese*, 907 F.2d 1192, 1201 (D.C.Cir.1990) (per curiam).

■ We note initially that the $210 to $220 hourly rates charged by Gardner's attorney, John F. Conroy, were not unreasonable. Indeed, as attested by independent affidavit, these rates comport with "prevailing community standards" and are well within the realm of reasonableness. *See Shultz*, 8 F.3d at 851–52 (approving rates in excess of $300).

further matters to the Grand Jury 'in the absence of some new developments.' " *See Shultz*, 8 F.3d at 850. Here, as in *Shultz*, Gardner and his counsel made an objectively reasonable determination that the possibility of "new developments" was not so remote as to remove Gardner from the status of potential defendant. *Id.*

However, several expense items require adjustment for reasonableness.[4] The Act allows reimbursement only for attorneys' fees incurred *during* the Independent Counsel investigation, 28 U.S.C. § 593(f)(1), that were "reasonably related to a defense to such investigation." *In re Donovan*, 877 F.2d 982, 993 (D.C.Cir.1989) (per curiam); *see In re Olson*, 884 F.2d 1415, 1427 (D.C.Cir.1989) (per curiam) (holding that the Act provides recovery only for those fees "rendered in asserting the *merits* of the subject's defense against the criminal charges being investigated"). We must therefore disallow the $3,108 in fees incurred by Gardner in connection with his attorney's efforts to secure him an appointment with the House Permanent Select Committee on Intelligence. Although these efforts were undoubtedly stymied by his elevation to "subject" status in the Independent Counsel's investigation, they were not reasonably related to his *defense to* that investigation. *In re North (Gadd Fee Application)*, 12 F.3d 252, 256 (D.C.Cir.1994) (per curiam) (holding that fees incurred in representing petitioner "in connection with congressional investigations rather than the Independent Counsel investigation" were not reimbursable under the Act).

Likewise, we must disallow $550 in fees billed by Gardner's attorney for discussing his case with newspaper reporters. As we have previously held, "[m]edia related activity has no bearing on the operation of an independent counsel's investigation and thus is not reasonably related to a defense to such investigation." *In re Donovan*, 877 F.2d at 994; *In re Meese*, 907 F.2d at 1203.

Nor can we say that the $10,141.96 fee billed for the "defensive monitoring" of the ongoing prosecution of Clair George was reasonably related to Gardner's defense. Section 593(f) provides reimbursement only for fees reasonably incurred by an individual in "defense to" an Independent Counsel's investigation. *See Dutton*, 11 F.3d at 1078; *In re Olson*, 884 F.2d at 1427. We do not doubt that "defensive monitoring" may have seemed a reasonable expense from Gardner's perspective. A more objective measure is required, however. Absent more explicit congressional guidance than the Act provides, we can not ask the taxpayers to reimburse him for this expense.

Gardner also requests reimbursement for $23,127.53 in attorneys' fees incurred in responding to the Independent Counsel's Final Report. Although Gardner had a statutory right to comment on the Report to protect his reputation, 28 U.S.C. § 594(d)(2), we find that the number of hours expended by his attorneys in this regard (90.5) was unreasonably high. In *In re Donovan*, 877 F.2d at 994, this court allowed reimbursement for attorneys' fees incurred responding to an Independent Counsel's Final Report. There, however, the amount billed in connection with responding to the Report ($3,650) was small in proportion to the overall amount of fees claimed ($112,-281.56) and awarded ($72,875.06). *See id.* at 983, 994, 998. Here, by contrast, the fees billed by Gardner's attorney for responding to the Final Report amount to more than one-fourth of the total fees incurred. Even so, we are cognizant of the unique circumstances of the Walsh investigation. Walsh's Final Report was lengthy and complex and cast a number of aspersions on Gardner, aspersions to which he deserved a right to respond in detail. We will therefore reduce the fees requested for responding to the Final Report only by one-half.

Finally, our review of Gardner's application discloses several expenses that are inadequately documented. Many of the billing entries on which the fee request is based contain highly imprecise descriptions of the work performed, *e.g.*, "various telephone conferences." Moreover, these entries are rarely itemized by task, making it impossible to determine how much time to allocate to each task. *In re Olson*, 884 F.2d at 1428–29. Consequently, we are unable to meaningfully evaluate "the reasonableness of the billings, either as to the necessity of the particular service or the [total] amount of time expended on a given legal task," *In re Sealed Case,*

---

4. Gardner concedes, as he must, that neither the $19,989 in fees he incurred in preparing his fee application nor the $91.72 incurred for attorney meals are reimbursable under the Act. *See In re North (Gadd Fee Application)*, 12 F.3d 252, 257–58 (D.C.Cir.1994) (per curiam).

890 F.2d at 455. We therefore impose a ten percent reduction on Gardner's final fee award. *In re Meese*, 907 F.2d at 1204–05 (imposing a ten percent reduction for inadequately documented billings); *In re Sealed Case*, 890 F.2d at 455–56 (same); *cf. Gadd*, 12 F.3d at 257 (imposing a thirty percent reduction where billings included both "inadequately justified fees and the dual additional possibility of unjustifiable time").

### III. CONCLUSION

In accordance with the above analysis, the award shall reflect the following:

1. Disallow $3,108 in attorneys' fees incurred in connection with attempts to secure Gardner's appointment with the House Permanent Select Committee on Intelligence.

2. Disallow $550 in fees for media related activity.

3. Disallow $10,141.96 in fees for "defensive monitoring."

4. Reduce fees for responding to the Independent Counsel's Final Report by half, or $11,563.77.

5. After all specific deductions are made, reduce the remaining fees by ten percent to disallow billings for attorneys' services that were inadequately documented.

For reasons set forth above, it is ordered that petitioner be awarded $53,120.74 in reasonable attorneys' fees and expenses. The computation is set forth in the Appendix.

*Judgment accordingly.*

### APPENDIX

| | | |
|---|---|---|
| Total Fee Request Including Expenses | | $84,386.77 |
| Specific Deductions in Opinion: | | |
| 1. Appointment with HPSCI | 3,108.00 | |
| 2. Media related activity | 550.00 | |
| 3. "Defensive Monitoring" | 10,141.96 | |
| 4. Responding to Final Report | 11,563.77 | |
| SUBTOTAL OF SPECIFIC DEDUCTIONS | | $25,363.73 |
| SUBTOTAL OF REQUEST | | $59,023.04 |
| 5. Ten percent deduction for insufficient documentation. | | 5,902.30 |
| TOTAL AWARD | | $53,120.74 |