Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Filed May 11, 2004

———

Division No. 94-1

In Re: Madison Guaranty Savings & Loan
(Marceca Fee Application)

———

Division for the Purpose of
Appointing Independent Counsels
Ethics in Government Act of 1978, As Amended

———

Before: Sentelle, *Presiding*, Fay and Reavley, *Senior Circuit Judges*.

**O R D E R**

This matter coming to be heard and being heard before the Special Division of the Court upon the application of Anthony B. Marceca for reimbursement of attorneys' fees and costs pursuant to section 593(f) of the Ethics in Government Act of 1978, as amended, 28 U.S.C. § 591 *et seq.* (2000), and it appearing to the court for the reasons set forth more fully in the opinion filed contemporaneously herewith that the petition is in part well taken, it is hereby

**ORDERED, ADJUDGED,** and **DECREED** that the United States reimburse Anthony B. Marceca for attorneys' fees

and expenses he incurred during the investigation by the Independent Counsel in the amount of $82,033.50.

*PER CURIAM*

For the Court:

Mark J. Langer, Clerk

By:

Marilyn R. Sargent, Chief Deputy Clerk

Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

————

Filed May 11, 2004

————

Division No. 94-1

IN RE: MADISON GUARANTY SAVINGS & LOAN (MARCECA FEE APPLICATION)

————

Division for the Purpose of
Appointing Independent Counsels
Ethics in Government Act of 1978, As Amended

————

Before: SENTELLE, *Presiding*, FAY and REAVLEY, *Senior Circuit Judges*.

## ON APPLICATION FOR ATTORNEYS' FEES

Opinion for the Special Court filed *PER CURIAM*.

*PER CURIAM*: Anthony B. Marceca petitions this Court under section 593(f) of the Ethics in Government Act of 1978, as amended, 28 U.S.C. §§ 591–599 (2000) ("the Act"), for reimbursement of attorneys' fees in the amount of $188,968.44 that he claims were incurred during and as a result of the investigation conducted by the Independent Counsel. Because we find that Marceca has established his entitlement under the statutory criteria for reimbursement of a portion of the fees we will, for the reasons set forth more fully below, allow recovery of $82,033.50.

## Background

In early 1995, during a congressional investigation into the firings of White House Travel Office employees, it was discovered that the Clinton administration had requested confidential FBI background reports on a large number of persons, listing access to the White House as the reason for the request. Many of these persons, however, did not work for the Clinton administration; instead, they were former staff members from both President Reagan's and President Bush's administrations who would have no need for access to the White House grounds.

Because the request for the FBI background reports included at least one travel office employee, the office of Independent Counsel Kenneth W. Starr (hereinafter "IC" or "OIC"), which had previously had its jurisdiction expanded to include the allegedly illegal Travel Office firings, issued subpoenas to appear before the grand jury to two White House employees involved in the request. One of these employees was Anthony Marceca, the fee petitioner here, who had apparently requested the reports. He was an employee of the White House Office of Personnel Security, whose duty it was to assemble background information on persons in need of access to the White House. Following the grand jury appearances, the OIC informed the Attorney General that it would not be conducting an investigation into the matter as it was not within the OIC's current jurisdiction. The Attorney General then immediately began a preliminary investigation into the matter pursuant to the Independent Counsel statute. *See* 28 U.S.C § 591. Although section 592 (a)(1) of the statute allows 90 days for the AG to complete a preliminary investigation in order to make a determination of whether further investigation by an independent counsel is warranted, the AG in the present case referred the FBI files matter to the OIC after only two days. In referring the case, the AG stated that she had concluded that further investigation of the matter was warranted and "that additional preliminary investigation . . . would not be appropriate in this situation because of the political conflict of interest." *See* Application for

Expansion of Independent Counsel's Jurisdiction 3 (June 21, 1996).

The Clinton administration, which apparently considered the situation to be only a "bureaucratic blunder," faulted the Secret Service for providing to Marceca an outdated and inaccurate list of "holdover" employees from the previous administration. Employees of the Secret Service, however, presented testimony that its computer system was not capable of producing such an outdated list. Consequently, suspicions arose that the Clinton administration deliberately requested the files in order to obtain derogatory information on members of the previous administration, and that Marceca made knowing and willful false statements when requesting the FBI files. After conducting an extensive investigation, during which Marceca was granted use immunity, the IC determined that no charges would be brought as Marceca had in fact used an outdated list supplied by the Secret Service.

Pursuant to section 593(f)(1) of the Act, Marceca now petitions the court for reimbursement of attorneys' fees that he allegedly incurred in defense of the IC's investigation, in the amount of $188,968.44. As directed by section 593(f)(2) of the Act, we forwarded copies of Marceca's fee petition to the Attorney General and the IC and requested written evaluations of the petition. The court expresses its appreciation to the IC and the Attorney General for submitting these evaluations, which we have given due consideration in arriving at the decision announced herein.

## Discussion

The Independent Counsel statute provides:

> Upon the request of an individual who is the subject of an investigation conducted by an independent counsel pursuant to this chapter, the division of the court may, if no indictment is brought against such individual pursuant to that investigation, award reimbursement for those reasonable attorneys' fees incurred by that individual during that investigation which would not have been incurred but for the requirements of this chapter.

28 U.S.C. § 593(f)(1). Accordingly, in order to obtain an attorneys' fees award under the statute, a petitioner must show that all of the following requirements are met: 1) the petitioner is a "subject" of the investigation; 2) the fees were incurred "during" the investigation; 3) the fees would not have been incurred "but for" the requirements of the Act; and, 4) the fees are "reasonable." *See In re North (Dutton Fee Application)*, 11 F.3d 1075, 1077–82 (D.C. Cir., Spec. Div., 1993) (per curiam). The petitioner "bears the burden of establishing all elements of his entitlement." *In re North (Reagan Fee Application)*, 94 F.3d 685, 690 (D.C. Cir., Spec. Div., 1996) (per curiam). There appears to be little disagreement that Marceca was a "subject" of the IC's investigation or that his fees were incurred "during" that investigation. We will therefore limit our discussion to the "but for" and "reasonable" requirements.

\* \* \* \* \* \* \* \* \* \*

**The "but for" requirement.** Marceca argues that he satisfies the "but for" requirement under two theories previously identified by the Court: 1) when the subject is prejudiced by the Department of Justice's failure to comply with the substantive protective features of the Act; and 2) when (according to Marceca) "one of the Act's peculiar *restrictions* on the conduct of preliminary investigations has forced the Attorney General to refer to an independent counsel an investigation that the Justice Department acting according to its standard policies would have abandoned at an early stage for lack of probable cause." Application for Attorneys' Fees at 19, 24–25.

With respect to theory (1), Marceca's argument relies extensively upon a favorable comparison of his case to *In re Meese*, 907 F.2d 1192 (D.C. Cir., Spec. Div., 1990). In that case, an independent counsel had been appointed to investigate Franklin C. Nofziger's relationship to the Wedtech company. Subsequently, the Acting Attorney General by letter referred to the independent counsel the investigation of Attorney General Edwin Meese's relationship to Wedtech. No preliminary investigation as mandated by the Act was

conducted. Nevertheless, the Acting Attorney General's referral letter urged the independent counsel to accept the referral for numerous reasons, including the suggestion that public confidence in the administration of justice would be better served if the investigation was conducted independently. The Court stated that the reasons given were "insufficient to constitute the 'reasonable grounds' the statute requires to justify the application for further investigation by an independent counsel," *id.* at 1199, and that the "but for" requirement was therefore satisfied in part because of "the basis upon which the referral was made." *Id.* at 1201. In sum, the Court noted that the investigation of Meese did not follow the statutorily prescribed procedure, i.e., it did not originally begin following an application to, or order from, the Court, and the preliminary investigation was not completed in such a manner as to conclude that there were "reasonable grounds" to believe that further investigation was warranted. *Id.* at 1197.

Marceca asserts that in his case "*Meese* is directly controlling." He notes that the Act gives the Attorney General up to ninety days to conduct a preliminary investigation, that this ninety days is the "usual duration of a preliminary investigation," that "as in *Meese*, the Justice Department terminated the preliminary investigation process before it had a chance to begin, with the entire process in this case lasting just two days," and that as in *Meese* there was no "statutorily-required finding that there were 'reasonable grounds' to believe that the subject of the investigation had engaged in any criminal activity." Marceca further argues that, "as in *Meese*, the Justice Department's avowed justification for cutting short the preliminary investigation was to avoid the perception of a 'political conflict of interest.'" He summarizes his argument by asserting that the DOJ failed to comply with the substantive protective features of the Act by not conducting a normal preliminary investigation. Application at 21.

Marceca goes on to argue that he was "prejudiced" by the DOJ's failure to comply. He explains that approximately one week before the expansion of the IC's jurisdiction to encompass this matter, two OIC attorneys assigned to the Travel

Office inquiry had assured Marceca's lawyer at his grand jury appearance "that the FBI files matter was a 'tempest in a teapot'. . . . and that they expected the matter would go away *quickly without any difficulty*." Application at 22 (emphasis supplied by Marceca). Marceca further notes that he was served a grand jury subpoena by the OIC attorneys without being advised that he was a target of any criminal investigation. Taking all of this into consideration, Marceca claims that "it is quite apparent that in this case, experienced prosecutors . . . conclude[d] after conducting an initial investigation of the matter that the circumstances did not call for a criminal investigation of [him]," and he was therefore prejudiced because he "did not receive the benefit of an early disposition that he would have received had his case been handled in the ordinary manner." Application at 24.

The IC in her evaluation disputes Marceca's contention that in the absence of the Act a similar investigation of the matter would not have been conducted. The IC notes that on the day of Marceca's grand jury appearance, when the above-mentioned statements of the OIC prosecutors were supposedly made, the only information available to the OIC was the testimony of Marceca and one other witness stating that the access list had been produced by the Secret Service in the normal course of business and was not part of any criminal scheme. Soon thereafter, however, Secret Service officials testifying before Congress stated that their computers were not capable of producing such an outdated access list. This contradictory testimony, according to the IC, "raised very serious questions and concerns for investigators," including the possibility that false statements were made and restricted information obtained. Consequently, according to the IC, "whatever law enforcement agency was tasked with investigating the matter . . . would necessarily have to conduct an investigation similar to that which was actually conducted." IC Evaluation at 8–9.

The DOJ in its evaluation also disputes Marceca's claim that this matter would not have been investigated in the absence of the Act. Contrary to Marceca's assertions, the DOJ notes that "the preliminary investigation here revealed

substantial and credible evidence of possible criminal activity by Mr. Marceca," DOJ Evaluation at 6, leading the Attorney General to conclude that "further investigation is warranted to determine whether the inaccurate request forms were knowing and willful false statements in violation of 18 U.S.C. § 1001." *See* Application for Expansion of Independent Counsel's Jurisdiction 3 (June 21, 1996).

We first note that although Marceca states that *Meese* is controlling here, the two cases appear to be distinguishable. In her application to the Court for expansion of the IC's jurisdiction, the AG, in contrast to the situation in *Meese*, stated that she had "commenced a preliminary investigation." Although after a very short period of time she "concluded that additional preliminary investigation . . . would not be appropriate in this situation because of the political conflict of interest," and although she did not use the "reasonable grounds to believe that further investigation is warranted" phrase from the Act, she nevertheless summarized the evidence obtained up to that point in time and consequently "concluded that further investigation is warranted to determine whether the inaccurate request forms were knowing and willful false statements . . . ." No similar conclusion was ever reached in *Meese*.

We nonetheless think Marceca makes a valid point that he did not receive the benefit of the protections built into the Act. As he points out, we have in the past awarded fees where a technical or apparent violation would not have been pursued against a private citizen by a professional prosecutor but was pursued at substantial length and at substantial expense by an independent counsel appointed pursuant to the statute. *See, e.g., In re Segal (Sagawa Fee Application)*, 151 F.3d 1085, 1088–89 (D.C. Cir., Spec. Div., 1988) (per curiam). Here, it appears probable that a preliminary investigation by the DOJ, conducted in the usual ninety days instead of two, would have revealed that the list provided by the Secret Service was outdated, contrary to the testimony before the Congress. And we note that the OIC tried once to hand the matter back to DOJ before it ever got off the ground, and that experienced counsel called it a "tempest in a teapot."

Consequently, we find that Marceca has cleared the "but for" hurdle and that he is entitled to an award of attorneys' fees, subject to the reductions set forth below.

**The "reasonable" requirement.** Marceca claims that he should be reimbursed for time spent on his representation before the congressional committees investigating the FBI files matter and in a civil suit brought by Judicial Watch. Although he acknowledges that "the tasks for which fees are sought must be tasks that are necessitated by the independent counsel investigation," he argues that he would not have incurred any attorneys' fees "were it not for the fact that [he] had been made the target of a criminal investigation." He asserts that in both the congressional investigation and the civil suit he needed advice of counsel only to preserve and protect his Fifth Amendment privilege vis-a-vis the IC's investigation. In other words, he is apparently claiming that absent the IC's investigation, he would not have had to retain counsel for the other two matters and therefore he should be reimbursed for his attorneys' fees spent on them.

For authority Marceca cites *In re North (Adkins Fee Application)*, 33 F.3d 76 (D.C. Cir., Spec. Div., 1994), in which the court allowed reimbursement for a portion of fees incurred in efforts to obtain immunity for Adkins from the Iran–Contra Congressional Committee. The court reasoned that the efforts to obtain immunity for Adkins "served a dual purpose" in that the immunity was sought "both to facilitate his testimony before the Committee and to impair any effort of the Independent Counsel to prosecute him," and consequently the attorneys' fees "were in part incurred to shield [Adkins] from the Independent Counsel." According to Marceca, *Adkins* shows that the court "has recognized that [a subject] often needs counsel . . . to protect [the subject's] interests in defending against the criminal investigation when other inquiries or proceedings threaten to interfere with those interests," and that the fees incurred for such counsel are, as here, reimbursable. Application at 27.

In her evaluation, the IC, citing to *In re North (Gardner Fee Application)*, 30 F.3d 143 (D.C. Cir., Spec. Div., 1994),

and *In re North (Gadd Fee Application)*, 12 F.3d 252 (D.C. Cir., Spec. Div., 1994), asserts that "[t]his Court has frequently held that fees related to parallel congressional investigations are not recoverable under the Act." Evaluation at 11. The IC notes that in *Gardner* the court disallowed fees incurred by Gardner in connection with efforts to enable him to speak to the House Intelligence Committee, with the court stating that "the Act provides recovery only for those fees 'rendered in asserting the *merits* of the subjects' defense against the criminal charges being investigated.'" 30 F.3d at 147 (emphasis in original) (quoting *In re Olson*, 884 F.2d at 1427). The IC suggests that if any award is given, these fees should be deducted. Evaluation at 13–14.

The DOJ in its evaluation likewise asserts that fees incurred as a result of a congressional investigation are not reimbursable under the Act, even if the congressional investigation "addresses a related (or even the same) subject as an OIC investigation." For authority, the DOJ cites *In re North (Shields/Gruner Fee Application)*, 53 F.3d 1305, 1308 (D.C. Cir., Spec. Div., 1995), in which the court disallowed fees "arising from the conferences with and testimony before the Senate Intelligence Committee"; and *In re North (Haskell Fee Application)*, 74 F.3d 277, 282 (D.C. Cir., Spec. Div., 1996), where the court, citing *Shields/Gruner*, stated that "fees incurred in connection with congressional matters are not reimbursable under [the Act]."

Both the IC and the DOJ argue that other fees should also be denied because of a lack of reasonableness. Specifically, the IC claims certain entries are inadequately documented; certain tasks were performed by multiple attorneys, while other tasks involved defensive monitoring. For its part, the DOJ also claims inadequacy of some of the billing documentation, duplication of effort on the part of Marceca's attorneys, and inclusion of fees for media-related activities.

We agree with the IC and the DOJ that our general rule in past decisions has been that fees related to parallel congressional investigations are not recoverable under the Act, *see In re North (Gardner Fee Application)*, 30 F.3d at 147; *In re*

*North (Gadd Fee Application)*, 12 F.3d at 257, and we think this general rule should prevail here. Especially is this true since it simply cannot be the case that the congressional fees would not have been incurred "but for" the provisions of the Act. Once it became apparent that this politically-charged series of events had occurred, Congress would not have resisted undertaking the investigation that it did. While we have at least once in the past awarded fees for a portion of a representation before a congressional committee, the portion we awarded was for the attempt to negotiate an immunity which would have in fact benefitted (probably completely) the petitioner's defense against the independent counsel investigation. *In re North (Adkins Fee Application)*, 33 F.3d at 77. The instant case reflects no such causal connection between the independent counsel investigation and the congressional investigation (or between the independent counsel investigation and the civil action). Indeed, it is unthinkable that Congress would have let this politically-charged incident go unexamined in an election year, whatever statutes were on the books with reference to the independent counsel or anything else. We will therefore not allow reimbursement for any of the substantial fees connected with the congressional investigation or civil action.

Furthermore, the award will not include any fees incurred for media-related activities, *see, e.g., id.* at 690; *In re Donovan*, 877 F.2d 982, 994 (D.C. Cir., Spec. Div., 1989), or for "defensive monitoring" of other cases, *see, e.g., In re North (Gardner Fee Application)*, 30 F.3d at 147.

Finally, as both the IC and the DOJ point out, many of the billing entries submitted by both attorneys do not state with sufficient specificity the task worked on. As we have held previously, adequate documentation of legal work performed is a necessary ingredient for the reimbursement of attorneys' fees, *see In re Meese*, 907 F.2d at 1204, and inadequate documentation "makes it impossible for the court to verify the reasonableness of the billings, either as to the necessity of the particular service or the amount of time expended on a given legal task." *In re Sealed Case*, 890 F.2d 451, 455 (D.C. Cir., Spec. Div., 1989). In prior cases we have imposed a ten

percent (10%) reduction of the final fee award for similar insufficiencies, *see, e.g., In re North (Gardner Fee Application),* 30 F.3d at 147–48; *In re Meese,* 907 F.2d at 1204, and we will impose the same reduction here. Likewise, we will not allow reimbursement for $5,970.00 that has been submitted for "Law Clerks," as no information of any kind has been supplied as to the nature of the tasks performed by these clerks.

*Expenses.* Marceca seeks reimbursement for expenses in the amount of $9,288.44. This figure includes $5,437.08 for "Copies" or "Photocopying" or "Outside Photocopying" that are not otherwise explained. In the past we have made deductions for comparable fees because of a lack of supporting documentation, and we will do so here, reducing the amount by $2,500. *See In re North (Gregg Fee Application)*, 57 F.3d 1115, 1117 (D.C. Cir., Spec. Div., 1995) (per curiam); *In Re Meese*, 907 F.2d at 1204. Similarly, Marceca claims a total of $675.40 for computer research, which also lacks any supporting documentation, and we therefore will reduce this amount by $300.00. *Id.* Finally, we will make deductions of $161.19 for "Lunch Expenses," *see In re North (Haskell Fee Application)*, 74 F.3d 277, 282 (D.C. Cir., Spec. Div., 1996) (per curiam), of $38.40 for "Travel Expenses," and of $7.00 for "Local Transportation" that are not otherwise explained, *see In re North (Shultz Fee Application)*, 8 F.3d 847, 852–53 (D.C. Cir., Spec. Div., 1993) (per curiam).

### Conclusion

In light of the foregoing discussion, Anthony B. Marceca shall be reimbursed for attorneys' fees and expenses in the amount of $82,033.50. The final calculations are set out in the appendix.

# APPENDIX

| | |
|---|---:|
| <u>Total attorneys' fees requested</u>: | $179,680.00 |
| | |
| Reduction for congressional investigation, civil case, defensive monitoring, and media-related activities: | − <u>$ 89,541.50</u> |
| | $ 90,138.50 |
| | |
| Reduction for unexplained law clerks' time: | − <u>$   5,970.00</u> |
| | $ 84,168.50 |
| | |
| Ten percent reduction for insufficient billing descriptions: | − <u>$   8,416.85</u> |
| | |
| **Total award for attorneys' fees:** | **$ 75,751.65** |
| | |
| <u>Total expenses requested</u>: | $   9,288.44 |
| | |
| Reductions from opinion: | − <u>$   3,006.59</u> |
| | |
| **Total award for expenses:** | **$   6,281.85** |
| | |
| **TOTAL AWARD:** | **$ 82,033.50** |