Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Filed July 20, 2004

———

Division No. 94-1

IN RE: MADISON GUARANTY SAVINGS & LOAN
(LIVINGSTONE FEE APPLICATION)

———

Division for the Purpose of
Appointing Independent Counsels
Ethics in Government Act of 1978, As Amended

———

Before: SENTELLE, *Presiding*, FAY and REAVLEY, *Senior Circuit Judges.*

**O R D E R**

This matter coming to be heard and being heard before the Special Division of the Court upon the application of D. Craig Livingstone for reimbursement of attorneys' fees and costs pursuant to section 593(f) of the Ethics in Government Act of 1978, as amended, 28 U.S.C. § 591 *et seq.* (2000), and it appearing to the court for the reasons set forth more fully in the opinion filed contemporaneously herewith that the petition is in part well taken, it is hereby

**ORDERED, ADJUDGED,** and **DECREED** that the United States reimburse D. Craig Livingstone for attorneys' fees

and expenses he incurred during the investigation by the Independent Counsel in the amount of $33,921.94.

*PER CURIAM*

For the Court:

Mark J. Langer, Clerk

By:

Marilyn R. Sargent, Chief Deputy Clerk

Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

————

Filed July 20, 2004

Division No. 94-1

IN RE: MADISON GUARANTY SAVINGS & LOAN
(LIVINGSTONE FEE APPLICATION)

————

Division for the Purpose of
Appointing Independent Counsels
Ethics in Government Act of 1978, As Amended

————

Before: SENTELLE, *Presiding*, FAY and REAVLEY, *Senior Circuit Judges*.

## ON APPLICATION FOR ATTORNEYS' FEES

Opinion for the Special Court filed *PER CURIAM*.

*PER CURIAM*: D. Craig Livingstone ("Livingstone") petitions this court under section 593(f) of the Ethics in Government Act of 1978, as amended, 28 U.S.C. §§ 591–599 (2000) ("the Act"), for reimbursement of attorneys' fees in the amount of $235,299.60 that he claims were incurred during and as a result of the investigation conducted by the Independent Counsel. Because we find that Livingstone has established his entitlement under the statutory criteria for reimbursement of a portion of the fees we will, for the reasons set forth more fully below, allow recovery of $33,921.94.

## I. Background

In early 1994, Robert B. Fiske, Jr. ("Fiske") was appointed regulatory independent counsel by the Attorney General to investigate, *inter alia*, President William Jefferson Clinton's and Hillary Rodham Clinton's involvement in matters concerning the Whitewater Development Company.[1] Previously, in July of 1993, Deputy White House Counsel Vincent W. Foster ("Foster") was found dead of a gun shot wound in a secluded park in suburban Washington, D.C. Special counsel Fiske, upon his appointment, opened an investigation into the circumstances surrounding Foster's death. One facet of this investigation concerned whether any Whitewater-related documents were removed from Foster's White House office soon after his death. In particular, it was alleged that D. Craig Livingstone, the fee petitioner here, who was Director of the Office of Personnel Security ("OPS") at the White House from 1993 to 1996, and in that capacity reported to the White House Counsel's Office, had taken documents from Foster's office in the early morning hours of the day following Foster's death.

In August of 1994, soon after reauthorization of the Act, a statutory independent counsel (hereinafter "IC" or "OIC") was appointed to assume the investigation being conducted by regulatory counsel Fiske. Before termination of his office, Fiske issued a report stating his conclusions on the circumstances surrounding Foster's death, but transferred to the IC the investigation of the allegations concerning the removal of documents from Foster's White House office. Because of these allegations and his involvement in them, Livingstone became a subject of the OIC's investigation.

The OIC also investigated what became known as the "FBI Files" matter. In early 1995, during a congressional investigation into the firings of White House Travel Office employees, it was discovered that the Clinton administration had requested confidential FBI background reports on a large

---

[1] Further background information on these matters can be found in *In re Madison Guaranty Savings & Loan (Clinton Fee Application)*, 334 F.3d 1119 (D.C. Cir., Spec. Div., 2003) (per curiam).

number of persons. "Access" to the White House was provided as the reason for the request. Many of these persons, however, did not work for the Clinton administration; instead, they were staff members from both President Ronald W. Reagan's and President George H.W. Bush's administrations who would have no need for access to the White House grounds.

After becoming aware of the request for the FBI files, the OIC, which previously had its jurisdiction expanded to include the Travel Office firings, issued subpoenas to appear before the grand jury to two White House employees involved in the requests. One of these employees was Anthony Marceca ("Marceca"), who had apparently requested the reports. He was an employee of OPS who had been hired by, and then reported to, Livingstone, and whose duty it was to assemble background information on persons in need of White House access.

Following these grand jury appearances, the OIC informed the Attorney General ("AG") that it would not be conducting an investigation into the matter, as it was not within the OIC's current jurisdiction. The AG immediately commenced a preliminary investigation pursuant to the Act to determine whether further investigation was warranted. Two days later the AG sought and obtained an expansion of the OIC's jurisdiction to include the FBI files matter. Livingstone was subsequently subpoenaed by the OIC to appear before the grand jury.

After conducting extensive investigations, the IC determined that no charges would be brought against Livingstone for either the Foster documents matter or the FBI files matter. Livingstone now petitions the court for reimbursement of attorneys' fees that he allegedly incurred in defense of the IC's investigations, in the amount of $235,299.60. As directed by section 593(f)(2) of the Act, we forwarded copies of Livingstone's fee petition to the Attorney General and the IC and requested written evaluations of the petition. The court expresses its appreciation to the IC and the Attorney General for submitting these evaluations, which we have

given due consideration in arriving at the decision announced herein.

## II.  Discussion

The Independent Counsel statute provides:

> Upon the request of an individual who is the subject of an investigation conducted by an independent counsel pursuant to this chapter, the division of the court may, if no indictment is brought against such individual pursuant to that investigation, award reimbursement for those reasonable attorneys' fees incurred by that individual during that investigation which would not have been incurred but for the requirements of this chapter.

28 U.S.C. § 593(f)(1).  Accordingly, in order to obtain an attorneys' fees award under the statute, a petitioner must show that all of the following requirements are met:  1) the petitioner is a "subject" of the investigation;  2) the fees were incurred "during" the investigation;  3) the fees would not have been incurred "but for" the requirements of the Act; and, 4) the fees are "reasonable."  *See In re North (Dutton Fee Application)*, 11 F.3d 1075, 1077–82 (D.C. Cir., Spec. Div., 1993) (per curiam).  The petitioner "bears the burden of establishing all elements of his entitlement."  *In re North (Reagan Fee Application)*, 94 F.3d 685, 690 (D.C. Cir., Spec. Div., 1996) (per curiam).

### A.  The Foster Documents Matter

Concerning the matter of the alleged removal of documents from Foster's office following his death, the only dispute among the parties appears to be whether Livingstone has satisfied the "but for" requirement.

Livingstone argues that he fulfils the "but for" requirement in this particular matter under three circumstances previously recognized by the court.  First, he invokes the duplication of investigations.  Livingstone acknowledges that this circumstance, as previously decided by the court, must involve the IC's duplication of the Department of Justice's ("DOJ") pre-

liminary investigation. Livingstone nevertheless claims that he meets the "but for" requirement because the IC's investigation "substantially duplicated Mr. Fiske's investigation of th[e] issue." He attempts to equate Fiske's investigation with that of a DOJ preliminary investigation by arguing that Fiske's investigation was conducted "at the request of the Justice Department."

The second "but for" circumstance which Livingstone claims he satisfies is when, absent the Act, the case would have been disposed of at an earlier stage of the investigation. His argument is premised on "the seven years the Independent Counsel kept the matter open," versus the "less than six months" that Fiske took to make his conclusions concerning Foster's death. He asserts that "no ordinary prosecutor" would have spent the time or money that the IC spent investigating the Foster documents matter absent any evidence that documents were in fact missing.

Third, Livingstone claims that he was investigated under circumstances in which a private citizen would not have been investigated. According to Livingstone, these circumstances involved only his "leaving the building in which he works carrying a briefcase . . . at an unusual hour." He further argues that there was an "absence of any evidence that documents were, in fact, missing;" and that in any event there was "irrefutable proof that he was not there at [the stated] hour." Such circumstances, according to Livingstone, "would not likely give rise to a criminal investigation" of a private citizen.

In her evaluation, the IC argues that Livingstone's circumstances do not fit into any of those found by the court to fulfill the "but for" requirement. With respect to Livingstone's claim that the IC's investigation duplicated that of special counsel Fiske, the IC first notes that Fiske's investigation with respect to the Foster documents matter was not completed before the investigation was transferred to the IC. Therefore, the IC did not duplicate Fiske's investigation, but rather completed it. The IC further notes that, in any event, the "but for" requirement is met under this circumstance only

when there is duplication by the IC of the DOJ's preliminary investigation, and that that was not the situation here.

With respect to Livingstone's argument that, absent the Act, the case could have been disposed of at an earlier stage of the investigation, the IC asserts that although the OIC was conducting various investigations for seven years, Livingstone's attorneys' billing records show that the time period he was billed for totaled only 13 months. Furthermore, concerning Livingstone's claim that he was investigated under circumstances that a private citizen would not have been, the IC argues that this investigation involved "the question of whether a White House employee had tried to remove documents that were potentially incriminating to the President, the First Lady, and the Deputy White House Counsel from the office of the latter," and that a rigorous investigation would have resulted regardless of who had conducted it. Finally, the IC argues that Livingstone cannot show that this matter would not have been investigated in the absence of the Act, because special counsel Fiske did exactly that.

In its evaluation, the DOJ also argues that Livingstone does not meet the "but for" requirement concerning the Foster documents matter. First, as did the IC, the DOJ disputes Livingstone's argument that the "but for" requirement is met because the IC duplicated Fiske's investigation. The DOJ also claims that any such duplication must be of the DOJ's preliminary investigation pursuant to the Act, and that here "Mr. Fiske's investigation was not a preliminary investigation under the Act." The DOJ further contends that Livingstone invokes an incorrect legal standard when he argues that he fulfils the "but for" test because he would not have been investigated had he been a private citizen. For its part, the DOJ states that the correct legal standard is whether someone similarly situated would have been investigated in the absence of the Act. Here, according to the DOJ, the preceding investigation of the matter conducted by special counsel Fiske proves Livingstone fails to satisfy the correct standard.

We agree with the IC and the DOJ that in this instance Livingstone has not passed the "but for" test. As noted above, Livingstone argues that he passes the test because duplicate investigations were conducted; because in the absence of the Act the case could have been disposed of sooner; and because he would not have been investigated if he had been a private citizen. The duplicate investigations argument is without merit, as we have consistently stated that for the "but for" test to be met the IC's investigation must be a duplication of the Attorney General's preliminary investigation. *See, e.g., In re Babbitt (Babbitt Fee Application)*, 290 F.3d 386, 393 (D.C. Cir., Spec. Div., 1999) (per curiam). Livingstone puts forth no argument that such duplication occurred.

His argument that in the absence of the Act the case could have been disposed of sooner is also without merit. The circumstances surrounding this matter, i.e., the suspicious death of the deputy White House counsel and the alleged immediate removal from his office of documents potentially incriminating to the President and First Lady, would in all likelihood have been vigorously investigated by any "ordinary prosecutor." In *In re Pierce (Kisner Fee Application)*, 178 F.3d 1356, 1360–61 (D.C. Cir., Spec. Div., 1999) (per curiam), the fee petitioner made the similar claim that the IC's investigation far exceeded anything that would have been undertaken by the DOJ. In rejecting this argument, we noted that the nature of the allegations and the prominence of those involved "would no doubt have resulted in a complex and lengthy investigation with or without the appointment of an independent counsel." *Id.* at 1361. Here, Livingstone is in the same situation.

As for Livingstone's "private citizen" argument, the fee applicants in *In re Madison Guaranty Savings & Loan (Clinton Fee Application)* also made this claim. In rejecting the claim, we noted that the test is not what would have happened if the fee applicant had been a private citizen, but "rather what would have happened if there had been no independent counsel statute." *In re Madison Guaranty Savings & Loan (Clinton Fee Application)*, 334 F.3d at 1126.

Here, when indeed there was no independent counsel statute, the matter was nevertheless investigated by regulatory counsel Fiske, who at the end of his investigation transferred the matter to the OIC. As such, in the absence of the Act, a similar investigation of the matter would likely have been conducted.

As the "but for" requirement has not been met, no reimbursement for fees incurred in the Foster documents matter will be awarded.

*B. The FBI files matter*

In dispute here is whether the "but for" requirement has been met, and whether Livingstone was a "subject" of the IC's investigation.

1. The "but for" requirement. As he did concerning the Foster documents matter, Livingstone argues that he satisfies the "but for" requirement under several different circumstances previously recognized by the Court. His first claim concerns the Attorney General's conclusion of the preliminary investigation of the matter in just two days. According to Livingstone, the AG cut short the preliminary investigation in order "to try to stem the adverse publicity the Clinton White House was suffering after public disclosure of the existence of the files." He claims that if the AG had permitted the preliminary investigation to run its usual course, then "the Attorney General might well have concluded that, given the obvious errors in the Secret Service list of persons requiring access to the Clinton White House, no further investigation in fact *was* warranted." (Emphasis supplied by Livingstone.)

Livingstone's second claim is that even if the AG had used the full amount of time for the preliminary investigation, the only basis upon which she would have referred it to the IC would be the requirement in the Act that "[t]he Attorney General shall not base a determination . . . that there are no reasonable grounds to believe that further investigation is warranted . . . unless there is clear and convincing evidence that the person lacked [the state of mind required for the violation of criminal law involved]." 28 U.S.C. § 592

(a)(2)(B)(ii). Livingstone argues that if that were the case, "the 'but for' test still would be satisfied, because the Attorney General would by definition be prolonging the investigation solely because of the Independent Counsel statute's requirements."

Third, Livingstone contends that absent the Act, the IC's investigation of the FBI files matter "would have been disposed of at a much earlier stage of the investigation than the four years the Independent Counsel kept the matter open" and that "any other investigative body or authority" would not have taken nearly as long. Similarly, Livingstone claims that it is doubtful that, "given the obvious bureaucratic mistake that had been committed, [he] or Mr. Marceca would have been criminally investigated in these circumstances had they been private citizens rather than employees of the White House."

In her evaluation, the IC disputes Livingstone's claim that the AG conducted an exceptionally brief preliminary investigation in order to prevent any further bad publicity to the White House. She notes that this claim is nothing more than Livingstone's conclusion about the AG's motive, and that in any event, it is not a logical claim because the referral of a matter to an IC "generates substantial media attention."

As for Livingstone's argument that had the AG conducted a full-term preliminary investigation, she would have only referred the case to the IC because of the Act's strict "clear and convincing" mens rea requirement, the IC notes that Livingstone points to no facts to support this argument. Furthermore, she notes that in any event "[t]here would have had to have been convincing evidence that none of those involved had the requisite state of mind before no investigation would have been conducted." The IC goes on to note that, at the time of the preliminary investigation, there was substantial evidence that over 300 FBI reports on staff members of previous administrations had been improperly received at the OPS; that the White House admitted there was no legitimate reason to have the reports; that the Secret Service contradicted OPS's testimony as to how the files came to be

requested; and that Marceca, who had requested the files, admitted to utilizing them even after realizing that they had been improperly requested. Such evidence, according to the IC, "was clearly sufficient to satisfy the probable cause standard required of prosecutors in conducting further criminal investigation" and that no type of investigation substantially shorter than the IC's would have resolved the matter. As such, the IC argues that Livingstone's state of mind argument must fail.

In its evaluation, the DOJ argues, as it did concerning the Foster documents matter, that Livingstone invokes an incorrect legal standard when he argues that he fulfils the "but for" test because he would not have been investigated had he been a private citizen. Rather, asserts the DOJ, the correct standard is whether someone similarly situated would have been investigated in the absence of the Act. Here, the DOJ argues that the answer is in the affirmative, because the FBI was investigating the matter even before the decision was made to refer the matter to the IC, and the allegations concerning the matter were "credible claims of serious wrongdoing."

With respect to Livingstone's claim that he meets the "but for" test because the AG did not take the full 90 days to conduct her preliminary investigation, the DOJ argues that in light of the circumstances surrounding the allegations "a more extensive preliminary investigation was unnecessary."

Although the IC and the DOJ argue otherwise, it appears to us that with respect to the FBI files matter Livingstone has passed the "but for" test. In our recent opinion concerning the fee application of Marceca, we found the "but for" requirement fulfilled because a full length preliminary investigation by the DOJ, in contrast to the two-day investigation actually conducted, would in all probability have revealed that the list provided to Marceca by the Secret Service was in fact outdated; and this would have lead to a curtailed investigation. *In re Madison Guar. Sav. & Loan (Marceca Fee Application)*, 366 F.3d 922, 927 (D.C. Cir., Spec. Div., 2004) (per curiam). Since Livingstone was involved in the same

investigation, he fulfills the "but for" requirement under the same reasoning.

2. "Subject." While acknowledging that Marceca was the principal focus of the IC's investigation in the FBI files matter, Livingstone argues that he was also a subject because he requested Marceca be detailed to OPS and assigned Marceca to the files project. He buttresses this argument by claiming that he "was specifically denominated a subject of the Independent Counsel's investigation in communications between the Office of Independent Counsel and [his] counsel."

The IC, however, disputes Livingstone's "subject" claim. First, the IC contends that Livingstone's assertion that he was denominated a subject by the IC is incorrect, because in fact the IC made no such designation. Furthermore, the IC notes that Livingstone was subpoenaed to appear before the grand jury only as a witness, and was questioned by the OIC specifically with respect to who hired him for the position at OPS. Under these circumstances, according to the IC, "there is nothing to suggest that there was a realistic possibility that [Livingstone] would become a defendant."

Although there is some dispute as to whether or not Livingstone was informed by the IC that he was considered a subject, it appears that the circumstances were such that it was reasonable for him "to believe that there was a realistic possibility that he would become a defendant." *Dutton*, 11 F.3d at 1079. First, Livingstone was Marceca's boss, and it was Marceca who was the named subject of this part of the IC's investigation. Furthermore, as Livingstone's fee application points out, it was he who requested Marceca's detail to the White House and assigned Marceca the task of updating the White House passholder files. Under such conditions, it was reasonable for him to expect that the IC would "point the finger of accusation" at him. *Id.* at 1078 (holding fee applicant had subject status because of his involvement in same enterprise as his supervisor who was a defendant in an independent counsel's investigation); *In re North (Gadd Fee Application)*, 12 F.3d 252, 256 (D.C. Cir., Spec. Div., 1994) (per curiam) (same).

Consequently, we find that Livingstone is entitled to reimbursement of the attorneys' fees he incurred during the time he defended against the IC's investigation of his involvement in the FBI files matter. From the billings submitted, this appears to be approximately June 25, 1996 to September 25, 1997. He is further entitled to reimbursement of fees incurred for reviewing and replying to the IC's Final Report. His award is subject to certain reductions set forth below.

\* \* \* \* \* \* \*

As pointed out by both the IC and the DOJ, a significant portion of the billings concern work done for congressional investigations of the matter, as well as a civil suit brought by Judicial Watch. Livingstone argues that in order "to protect his interests in the grand jury investigation" he required "protective representation by criminal defense counsel in parallel Congressional investigations and the civil litigation filed by Judicial Watch covering the exact same issues." He contends that such circumstances render these fees reimbursable. But as we noted in *Marceca*, 366 F.3d at 928–29, our rule in past decisions has been that fees related to parallel Congressional investigations are not recoverable under the Act. *See, e.g., In re North (Gardner Fee Application)*, 30 F.3d 143, 147 (D.C. Cir., Spec. Div., 1994) (per curiam); *In re North (Gadd Fee Application)*, 12 F.3d at 257. We see no reason for straying from that rule here. Likewise, the fees incurred as a result of the civil suit brought by Judicial Watch are also not reimbursable.

We will also not allow reimbursement for $1200.00 that has been submitted for an attorney listed only as "HJM," with no information of any kind supplying the identity of this attorney or the reasonableness of the rates charged.

Finally, as both the IC and the DOJ point out, many of the billing entries submitted do not state with sufficient specificity the task worked on. As we have held previously, adequate

documentation of legal work performed is a necessary ingredient for the reimbursement of attorneys' fees, *see In re Meese*, 907 F.2d 1192, 1204 (D.C. Cir., Spec. Div., 1990) (per curiam), and inadequate documentation "makes it impossible for the court to verify the reasonableness of the billings, either as to the necessity of the particular service or the amount of time expended on a given legal task." *In re Sealed Case*, 890 F.2d 451, 455 (D.C. Cir., Spec. Div., 1989) (per curiam). In prior cases, we have imposed a ten percent reduction of the final fee award for similar insufficiencies, *see, e.g., In re North (Gardner Fee Application),* 30 F.3d at 147–48; *In re Meese,* 907 F.2d at 1204, and we will impose the same reduction here.

*Expenses*. Livingstone seeks reimbursement for expenses in the amount of $2,274.78 for the time period at issue. This figure includes $672 for "Inside Copy" that is not otherwise explained. In the past we have made deductions for comparable fees because of a lack of supporting documentation, and we will do so here, reducing the amount by $300.00. *See In re North (Gregg Fee Application)*, 57 F.3d 1115, 1117 (D.C. Cir., Spec. Div., 1995) (per curiam); *In re Meese*, 907 F.2d at 1204. Similarly, Livingstone claims a total of $449.60 for computer research, which also lacks any supporting documentation, and we therefore will reduce this amount by $200.00. *Id.* Finally, we will make a deduction of $540.00 for "Local Travel" that is not otherwise explained. *See In re North (Shultz Fee Application)*, 8 F.3d 847, 852–853 (D.C. Cir., Spec. Div., 1993) (per curiam).

## III. Conclusion

In light of the foregoing discussion, Livingstone shall be reimbursed for attorneys' fees and expenses in the amount of $33,921.94. The final calculations are set out in the appendix.

14

## APPENDIX

| | |
|---|---:|
| <u>Total attorneys' fees requested 6/25/96–9/25/97</u>: | $77,969.00 |
| Reduction of fees for Congressional investigation: | <u>− $35,346.54</u> |
| | $42,622.46 |
| Reduction of fees for civil case: | <u>− $14,434.50</u> |
| | $28,187.96 |
| Reduction of fees for unidentified attorney: | <u>− $  1200.00</u> |
| | $26,987.96 |
| Ten percent reduction for insufficient billing descriptions: | <u>− $ 2,698.80</u> |
| | $24,289.16 |
| Fees for review of Final Report: | <u>+ $ 8,398.00</u> |
| **Total award for attorneys' fees:** | **$32,687.16** |
| | |
| <u>Total expenses requested 6/25/96–9/25/97</u>: | $ 2,274.78 |
| Reductions from opinion: | <u>− $ 1,040.00</u> |
| **Total award for expenses:** | **$ 1,234.78** |
| | |
| **TOTAL AWARD:** | **$33,921.94** |